[Crim. No. 13949.   Second Dist., Div. Five.   May 23, 1968.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  CHARLES
RAY  DUVALL,  Defendant  and  Appellant.

Albert D. Silverman, under appointment by the Court of
Appeal, for Defendant and Appellant.

418

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant appeals from a conviction of robbery (Pen. Code, § 211) which the jury found to be in the first degree.

On October 10, 1966, at about 5:30 p.m., Sheldon Podwall the general manager of the Paramount Ice Cream Company in Burbank and Ruth Perez, his secretary, were in the office of the company when two men entered. One carried a shotgun, the other what "looked like a .45." Both wore stocking masks. By the customary procedure they obtained money from the company safe and from Podwall personally. Podwall testified that defendant "might" be the robber with the shotgun.

Some time after the robbery Miss Perez was shown several photographs. She picked defendant's as being that of one of the robbers. Several of the individuals whose photograph she was shown looked "somewhat similar" to defendant. She was "not absolutely certain" that defendant was one of the robbers, but he did fit the general characteristics of the man who carried the shotgun.

There is other evidence in the record linking defendant to the crime. Since it is not contended that there was insufficient corroboration of the accomplice testimony summarized below (Pen. Code, § 1111) we need not mention it any further.

The prosecution's case was based, in large part, on the testimony of two brothers, Allen and Gary Rowden. Both had been employed at the Paramount Ice Cream Company in the past. On October 10 they drove to Burbank in Gary's car. During the drive they made preparations for the robbery. One Glen Sherley was with them. Allen and Gary waited in a nearby parking lot, defendant and Sherley went into the ice cream company's premises. After the robbery they drove to Allen's house.

Allen was arrested that night, Gary turned himself in on October 12. Both confessed. Allen's testimony is ambiguous with respect to whether or not he immediately named defendant as one of the robbers: "Q. Now, when you first were questioned by the Burbank police officers—you recall being first questioned by the Burbank police officers together with the Los Angeles police officers? A. Yes, I— Q. All right. Now, did you at that time know the last name of Mr. DuVall? A. No, I didn't. Q. What name, if any, did you refer to Mr. DuVall by? A. Chuck. Q. Did you know what area Chuck

came from? A. No, I didn't. Q. Did you know anything about Chuck's connection with Mr. Sherley at that time? A. Yes. Q. All right. Now, did you at that time inform these officers about Mr. Sherley's involvement? A. Yes, I believe I did. Q. Did you at that time inform the officers about your brother's involvement? A. I believe so. Q. That is your brother Gary; is that right? A. Yes.''

Gary, without objection, testified as follows: ''Q. At that time did you speak freely and voluntarily to the officers? A. To the best of my knowledge, I did. Q. Did you tell the officers about your involvement? A. Yes, I did. Q. Do you recall which officer you first spoke to and told him your involvement? A. I spoke to Mr. Cohen, and Mr. Wisehart, and Mr. Sartoris. And there was another officer, I don't remember his name, from the Burbank Police Department. Q. Did you at that time give them the name of Chuck? A. Yes, I did. Q. Did you also give them all the information that you had concerning Chuck? A. Yes, I did. Q. Where he had come from and when you had last seen him, everything like that? A. As far as I knew.''

The People then called Officer Wisehart and, again without objection, he testified that Allen had ''mentioned'' the name of ''Chuck.'' Objection concerning the contents of Allen's statement was sustained. A few minutes later the examination turned to Gary: ''Q. Did Mr. Gary Rowden tell you of his involvement in the Paramount Ice Cream Company robbery? A. Yes, he did. Q. At that time did he mention the name of Chuck? MR. ROSENSTOCK: I will object to that. It is immaterial and irrelevant. MR. STOVITZ: Your Honor, we are going to offer this as a prior consistent statement at a time when there was no purpose to contrive any type of false statement for showing— MR. ROSENSTOCK: That is argumentative, counsel, as to whether or not there was a purpose, but if it was contrived, there was a purpose the moment that these people may have conspired. If you want to argue before the jury, I can, too. THE COURT: The objectioin is overruled. By MR. STOVITZ: Q. At that time did Mr. Gary Rowden make any statement concerning a Chuck? A. Yes, he did. Q. In this statement did you ask for a description of Chuck? A. Yes, I did. Q. Without telling us what was said, was a description given? A. Yes. . . .''

The only complaint, on appeal, is that the admission of Wisehart's testimony concerning Gary's extrajudicial mention of defendant violates the ''policy and purpose'' of *People v. Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].

From what has been said so far it should be apparent that, whether or not the admission of the objectionable testimony violated the letter or the spirit of *Aranda,* the court's ruling was harmless beyond a reasonable doubt. Gary had been permitted to testify that he had mentioned "Chuck" to the officers and Officer Wisehart had testified without objection that Allen had mentioned defendant. To permit him to state that Gary had done the same added nothing.

Further the situation at the trial presented a classical application of the admissibility of prior consistent statements for the purpose of rehabilitation.[1] In cross-examination of Gary and Allen the defense had developed that while both had been charged with robbery, they had been permitted to plead guilty to possession of a sawed off shotgun. Relevant questions and answers are copied in the footnote.[2] The idea that Allen and Gary were implicating defendant because of a deal made with the office of the district attorney was firmly planted in the minds of the jurors. This entitled the prosecution to show that the two brothers had implicated the defendant even before the alleged motive to fabricate arose. (*Barkly*

---

[1] California is one of the most liberal states as far as the admission of prior consistent statements is concerned. (See for example *People* v. *Hardenbrook,* 48 Cal.2d 345, 351 [309 P.2d 424]; *People* v. *Walsh,* 47 Cal.2d 36, 41 [301 P.2d 247].) Section 791 of the Evidence Code—in effect at the time of the trial here—further liberalizes earlier case law.

[2] Cross-examination of Allen Rowland: ''. . . Q. Had the District Attorney's office made some sort of an offer to you in exchange for your testifying here in court? A. What do you mean by 'offer'? Q. Well, in regards to any reduction in your sentence or any reduction of the charges against you? A. Just that it would be, that the Court would be informed that I had cooperated. Q. Who told you that? A. Mr. Stovitz. Q. That is the District Attorney right here? A. Yes, sir. . . . Q. At the time of your probation sir, your hearing, are you expecting the other Counts to be dropped? A. I am hoping they will be, but I don't know that they will be. . . . Q. Has any suggestion that you might receive probation been made to you? A. Just that it was a possibility. Q. Who told you that? A. Mr. Nunnelley, the Public Defender. Q. Was there any conditions that you might testify in this court, and therefore it would help you? A. I was told that it couldn't hurt anything, and that if I told the whole truth that it would be noted that I had cooperated. . . .''

Cross-examination of Gary: ''Q. Mr. Rowden, you were charged with this crime of robbery, were you not? A. Yes, I was. Q. And through some conversations that you had with the District Attorney's office or some police officers your charge was reduced to Possession of a shotgun? A. Yes, it was. Q. Was that in consideration of your testifying in this courtroom? A. I believe so, yes. Q. Were there any promises made or discussions had regarding the possibility that, although you had pled guilty to a possession of a shotgun, you may receive probation, or else County Jail time, rather than State Prison time? A. There was no promises made. Q. Was there some conversation inferring that this was a possibility? A. Yes, there was. ˙Q. Who made this suggestion? A. The District Attorney, I believe, and Mr. Nunnelley. Q. All right. Mr. Nunnelley is the Public Defender, is he not? A. Yes, he is. . . . .''

v. *Copeland,* 74 Cal. 1, 5-7 [15 P. 307, 5 Am.St.Rep. 413]; *Di Carlo* v. *United States,* 6 F.2d 364, 366; *People* v. *Singer,* 300 N.Y. 120 [89 N.E.2d 710]; 4 Wigmore, Evidence (3rd ed. 1940) § 1128, p. 203; McCormick, Evidence, p. 109.)

Defendant's trial counsel was, of course, correct when in his objection he pointed to the fact that a motive to implicate defendant may even have been present at the time of Allen's and Gary's earliest conversations with the police. At various points during the trial he had attempted—without much success—to develop the theme that Gary and Allen were implicating defendant in order to shield someone else, most likely their brother Larry who had given certain damaging testimony against defendant and who was unable to account for his activities at the time of the robbery except by testifying that he was on his job, driving a truck. However, that there was always present a questionable motive to fabricate should not deprive the prosecution ˊof its right to show that another motive, clearly established by the evidence, did not affect the witnesses' stories.

The fact that this evidence was properly received against defendant[3] is what distinguishes this case from *Aranda.* The entire rationale of *Aranda* is that the finder of fact—be it jury or judge (*People* v. *Massie,* 66 Cal.2d 899, 923 [59 Cal. Rptr. 733, 428 P.2d 869]; *People* v. *Charles,* 66 Cal.2d 330, 338, fn. 12 [57 Cal.Rptr. 745, 425 P.2d 545])—cannot perform the mental gymnastics of considering evidence against one defendant, but forgetting about it in the case of the other against whom the evidence is inadmissible.

▉▉▉ Finally it should be pointed out that the objection was not made on *Aranda* grounds. Counsel claimed that the evidence was "immaterial and irrelevant" which it was not. *Aranda* was decided more than a year before the trial in the present case.

The judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 17, 1968.

---

[3]For what it was worth the evidence was received on the merits as well as for rehabilitation. (Evid. Code, §§ 791, 1236.) Of course the court's earlier ruling sustaining the defense objection to the actual contents of Allen's statement to Officer Wisehart foreclosed further inquiry. The ruling which was favorable to the defendant and probably erroneous, gives some color to the later objection that mere mention of Chuck was irrelevant. If the evidence was truly irrelevant then it is difficult to say how defendant could have been hurt by it.