[Crim. No. 14214. In Bank. Nov. 29, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT STERLING CANNADY et al., Defendants and Appellants.

## COUNSEL

Robert N. Harris, Jr., and Ralph D. Drayton, under appointments by the Supreme Court, for Defendants and Appellants.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edsel W. Haws and Arnold O. Overoye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BURKE, J.—Robert Sterling Cannady and Bufford Lee Beard, life prisoners, were indicted for an assault with malice aforethought and with a deadly weapon upon another inmate, Leonard Shiekscon Thompson (Pen. Code, § 4500). A jury found defendants guilty as charged and fixed Cannady's penalty at death and Beard's at life imprisonment. Cannady's automatic appeal is now before us (Pen. Code, § 1239, subd. (b)), and Beard's appeal from the judgment has been consolidated therewith.

Defendants contend that the court erred in admitting at the guilt trial prior consistent statements of witnesses as substantive evidence, defendants were denied a fair trial as a result of specified matters, the court erred in failing to give instructions on manslaughter and defense of another, and the court improperly gave an instruction on flight and misread an instruction in a manner prejudicial to defendants. ██ ██ We have concluded that none of the contentions can be upheld but that, since the death penalty cannot constitutionally be imposed here, the judgment entered against Cannady should be modified in accordance with *People* v. *Anderson,* 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880].[1] (See also *Furman* v. *Georgia,* 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726].) We affirm that judgment as so modified and the judgment entered against Beard.

On the morning of April 29, 1969, Lloyd Kelley (known as Coach Kelley), the supervisor of recreation at Folsom Prison, had a conversation in his office with the alleged victim, "Shiek" Thompson, and another inmate named Howard Cooper. Before the conversation terminated, Cooper left to go to the restroom after having noticed Cannady beckoning outside the office. En route Cooper asked Cannady what he wanted. Cannady replied that he did not want Cooper but was beckoning "for the snitch inside," apparently referring to Thompson. Cooper saw Cannady was holding an aluminum baseball bat behind him. Such bats are never properly at any location other than the athletic office or the baseball field without authorization by the coach. Cooper also observed Beard standing near the coach's office and saw him in the same spot upon Cooper's return from the restroom.

After the conversation between Coach Kelley and Thompson ended, Thompson went into an adjacent room called the "issue room," in which athletic equipment was handed out. Less than a minute later Kelley heard loud voices in the "issue room." He looked out, saw Thompson in the "issue room" and Cannady outside the room, and heard Thompson say "What the heck's the matter with you?" As the coach went into the "issue room," he saw Cannady pick up an aluminum baseball bat, which was leaning against the exterior wall of the "issue room," and make a thrusting

---

[1] "Although the electors at the November 7, 1972, General Election adopted Proposition 17 which added section 27 to article I of the Constitution purporting to nullify *Anderson's* holding of the invalidity of the death penalty, the constitutional prohibitions against ex post facto laws (U.S. Const., art. I, § 10; *Kring* v. *Missouri* (1882) 107 U.S. 221 [27 L.Ed.2d 506, 2 S.Ct. 443]; Cal. Const., art. I, § 16) preclude the application of the amendment to cases arising before its effective date (see Const., art. IV, § 1)." (*People* v. *Murphy, ante,* pp. 349, 352 [105 Cal.Rptr. 138, 503 P.2d 594].)

motion with the bat toward Thompson. Thompson at first tried to ward off the bat and then took hold of its opposite end. After Cannady entered the "issue room," Kelley attempted to grab the bat but was unsuccessful. Thompson managed to push Cannady to a point where the bat protruded out the door and hollered "Take the bat," apparently to someone outside. Beard stepped up as if to take the bat but instead pushed it aside and shoved a knife into Thompson's chest. Beard and Cannady thereupon pushed Thompson over to a desk. Cannady and Thompson both still held the bat, Thompson released it when Beard tried to stab him again. Beard stabbed Thompson twice, and Cannady beat Thompson on the head with the bat and also beat Thompson's leg with the bat until a bone was "sticking out."

Kelley left to summon aid. Upon his return with two officers, he saw defendants going in the general direction of a guard post. Thompson was lying on the floor of the "issue room" and near him were the bat and knife.

Thompson died a few minutes after being brought to a physician immediately after the alleged assault. The physician and the autopsy surgeon testified concerning Thompson's extensive injuries, including head wounds, a fractured leg, and stab wounds in his chest. According to the physician, the cause of death was the stab wounds, which involved the heart and both lungs, and contributory causes were possible concussion and fracture of both bones in one leg. The autopsy surgeon testified that the cause of death was stab wounds to the lungs.

Beard and Cannady were apprehended shortly after the incident. At the time of their apprehension Beard was outside the "issue room" and Cannady was in the prison recreation yard. The two men were then examined for injuries. No injuries were found on Cannady, and Beard had only a superficial scratch on his knee apart from a scratch treated before the alleged assault.

It was stipulated that each defendant was undergoing a life sentence in a California prison at the time of the alleged assault.

The defense presented was self-defense. Both defendants took the stand in their own behalf. Cannady testified: In the morning, before the incident, he had an argument with Thompson. He did not see Thompson again until the early afternoon when Cannady was near the "issue room" and heard someone yell "Look out." Cannady turned and saw Thompson coming toward him with a knife. Thompson lunged at him. Cannady caught Thompson's hand, and Thompson grabbed Cannady's jacket and

pulled him into the "issue room." After trying unsuccessfully to get away, Cannady took a bat from a rack in the "issue room" and hit Thompson with it. Thompson eventually got the bat from him. Cannady was part way down when Beard entered the affray. Beard pulled Thompson off Cannady, at which point Cannady left. Cannady acted in self-defense at all times. He was originally committed to prison for second degree robbery and assault and was convicted in 1963 of possession of a deadly weapon by an inmate and in 1964 of assault of another inmate in violation of section 4500.

Beard testified: He saw a group of inmates near the "issue room" and knew something was wrong. He went inside and saw Thompson holding someone (who he later found was Cannady) on the ground. At first Beard thought they were playing but realized they were fighting when he saw they were wrestling for the bat. Beard was then unarmed. He grabbed Thompson and pulled him up. Beard saw that Thompson had a knife in one hand and the bat in his other hand. Beard grabbed Thompson's hand that held the knife and following a struggle Thompson dropped the knife and Beard obtained it. Thompson tried to hit Beard with the bat and Beard stabbed Thompson, who then fell. Beard heard people saying that he "better leave," and he did so. So far as Beard knew Cannady was gone when Beard obtained the knife.

Several inmates, called as defense witnesses, testified that they saw Thompson grab Cannady and saw a knife in Thompson's hand. The defense also presented evidence of Thompson's aggressive nature.

The recited evidence manifestly is sufficient to support the convictions, and no claim is made to the contrary. As heretofore stated, however, defendants seek to have the judgments set aside on the following grounds:

## I. *Receipt of Prior Consistent Statements as Substantive Evidence*

Defendants contend that the admission into evidence of two prosecution witnesses' prior consistent statements as substantive evidence under Evidence Code section 1236[2] violated their right of confrontation guaranteed by the Sixth Amendment of the federal Constitution.

---

[2]Section 1236 provides: "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with his testimony at the hearing and is offered in compliance with Section 791."

Section 791 provides: "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after:

" . . . . . . . . . . . . . . . .

"(b) An express or implied charge has been made that his testimony at the

The first prosecution witness, Coach Kelley, testified that he saw Cannady pick up a bat, which was against the exterior wall of the "issue room," before thrusting it at Thompson. To impeach Kelley, defense counsel asked him on cross-examination whether he had not made a report in April 1969 containing a specified description of the incident, which description did not mention having seen Cannady pick up the bat, and Kelley responded in the affirmative. Thereafter the prosecutor on redirect examination of Kelley elicited the statement that he had testified before the grand jury in May 1969 that ". . . Cannady picked up the bat. . . ."

The second prosecution witness, Cooper, testified on direct examination to his version of the alleged assault. To impeach him, defense counsel asked him on cross-examination whether he had stated that he did not know anything about the incident when he talked to (1) the public defender's investigator a week before the trial and (2) the district attorney's investigator shortly after the alleged assault. Cooper replied that he had told the investigators that he did not have anything to say to them. Defense counsel also cross-examined Cooper concerning representations made to him by the prosecutor on October 1, 1969, the day before Cooper testified, and Cooper stated that the prosecutor had told him "the judge can rehear your case." For the purpose of rehabilitating Cooper, the prosecutor on cross-examination of the district attorney's investigator elicited testimony that when he had interviewed Cooper a second time, in June 1969, Cooper gave a narration concerning the alleged assault, which narration was substantially in accord with his testimony at trial.

No instructions were given limiting the purpose for which the prior consistent statements were admitted.

In support of their contention that the receipt of the prior consistent statements as substantive evidence under section 1236 violated their Sixth Amendment right of confrontation, defendants rely upon *People* v. *Washington* (1969) 71 Cal.2d 1061, 1076 [80 Cal.Rptr. 567, 458 P.2d 479], which held that "under the rationale of [*People* v. *Johnson*, 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111]], and based upon the Sixth Amendment, Evidence Code section 1236 is unconstitutional in criminal cases insofar as it permits the substantive use of prior consistent statements against defendant." The rationale of *Johnson*, however, was specifically rejected in *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930]. In *Green*, which concerned the admissibility of prior *inconsistent* statements by a witness (1) at the preliminary hearing and (2) to an

---

hearing is recently fabricated . . . and the statement was made before the . . . motive for fabrication . . . is alleged to have arisen."

officer, the United States Supreme Court declared (pp. 158, 161 [26 L.Ed. 2d pp. 497, 499]), "Viewed historically . . . there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. . . . [N]one of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial."

Kelley and Cooper testified at the trial and were then subject to full and effective cross-examination. Accordingly, the receipt of their prior consistent statements did not violate defendants' Sixth Amendment right of confrontation. (See *California* v. *Green, supra,* 399 U.S. 149; *People* v. *Bynum,* 4 Cal.3d 589, 603 [94 Cal.Rptr. 241, 483 P.2d 1193]; *People* v. *Green,* 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998] [cert. dismissed 404 U.S. 801 (30 L.Ed.2d 34, 92 S.Ct. 20)].)

Defendants also argue that the substantive use of the prior consistent statements violated the due process clause of article I, section 13, of the California Constitution. They rely upon *People* v. *Washington, supra,* 71 Cal.2d 1061. *Washington,* however, was based on the federal Constitution, and, as heretofore stated, the rationale upon which *Washington* relied was rejected in *California* v. *Green, supra,* 399 U.S. 149.

Furthermore, at the trial no objection was made to the admission of the prior consistent statements for their substantive use on the grounds now urged. As a general rule, the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection at the trial (*People* v. *Mabry,* 71 Cal.2d 430, 441 [78 Cal.Rptr. 655, 455 P.2d 759]; *People* v. *De Santiago,* 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]). Defendants, however, argue that the foregoing rule is inapplicable since defendants' trial was before *People* v. *Washington, supra,* 71 Cal.2d 1061, "became generally available to the profession."

*Washington* was filed about two weeks *before* defendants' trial began, but, even if it had not been filed until after defendants' trial, they would not have been excused from making an objection unless *Washington* " 'represented such a substantial change in the former rule as to excuse an objection anticipating that decision.' " (*People* v. *Groves,* 71 Cal.2d 1196, 1198 [80 Cal.Rptr. 745, 458 P.2d 985]; *People* v. *De Santiago, supra,* 71 Cal.2d 18, 22.)

Although *Washington* was the first case to hold that the admission of prior *consistent* statements as substantive evidence under section 1236

violated the defendant's right of confrontation under the Sixth Amendment, that holding was required by *People* v. *Johnson, supra,* 68 Cal.2d 646, a case decided over a year before defendants' trial. *Johnson* involved the admission of prior *inconsistent* statements as substantive evidence under Evidence Code section 1235, but this court noted in *Washington* (p. 1075), "We are unable to perceive any basic difference between the admission as substantive evidence of prior *inconsistent* statements of a witness on the one hand and prior *consistent* statements on the other. There appears to be no significant factor present in the former situation whose absence in the latter would obviate any infringement of a defendant's constitutional right to confrontation in a criminal case." Accordingly, *Washington* did not "represent such a substantial change in the former rule as to excuse an objection anticipating that decision."

Defendants further argue that Cooper's prior consistent statement was inadmissible under Evidence Code section 1236 because the prosecution complied with only one of the two conditions set forth in section 791, subdivision (b), of that code. (See fn. 2 herein.) ■ Defendants admit that there was an express or implied charge by defense counsel that Cooper's testimony was recently fabricated, but they assert that the prosecution failed to show that "the statement was made before the . . . motive for fabrication . . . is alleged to have arisen." However, one motive for fabrication was the representation by the prosecutor that "the judge can rehear [Cooper's] case," and Cooper's prior statement preceded that representation. That there may always have existed another motive for fabricating did not deprive the prosecution of its right to show that a motive shown by the evidence did not affect the witness' testimony. (See *People* v. *Duvall,* 262 Cal.App.2d 417, 421 [68 Cal.Rptr. 708].) Furthermore, no objection was made at the trial on the ground now urged, and defendants have shown no circumstances that would justify our departure from the ordinary rule that errors not challenged at trial cannot serve as grounds for reversal on appeal.

■ No claim is made that Kelley's prior consistent statement was inadmissible on the ground that the conditions in Evidence Code section 791 were not fulfilled, and no objection was made on that ground at the trial. The admissibility of that evidence under section 791 will therefore not be reviewed on appeal.

## II. *Asserted Denial of a Fair Trial*

Defendants further contend that they were denied a fair trial in that, although they were charged with violating Penal Code section 4500, the

trial was conducted as if the charge was murder. ■ In this connection they first argue that it was improper to admit the testimony of the physician and autopsy surgeon concerning Thompson's death because, assertedly, the fact of his death was irrelevant. Defendants admit that no objection was made to the evidence at the trial. Even had an objection on the ground of relevancy been made at the trial, it would not have been error to admit the testimony. (*People* v. *Berry,* 44 Cal.2d 426, 431 [282 P.2d 861] [overruled on another ground in *People* v. *St. Martin,* 1 Cal.3d 524, 537 (83 Cal.Rptr. 166, 463 P.2d 390)].) The findings of the physicians and their opinions as to the cause of death were relevant in the determination of the amount of force used and, consequently, of the mental attitude of each defendant at the time of the assault.

■ Defendants further argue that certain instructions, some of which were offered by the prosecution and others by the defense, improperly used terms such as "fatal blow" and "homicide"—that such instructions emphasized to the jury that it "was dealing with a case of homicide" and "could have no other effect than to prejudice and confuse the jury." However, as we have seen, evidence of the victim's death was properly admitted, and since the jury was aware of his death it is clear that the references in the instructions to the terms in question would not have prejudiced the jury against defendants. Nor would the references have confused the jury. The instructions given made clear the charge against defendants and the various possible verdicts.

III. *Asserted Error in Failing to Give Certain Instructions*

A. *Manslaughter Instruction*

Defendants contend that the court erred in failing to give an instruction on manslaughter.[3] ■ Although under some circumstances a manslaughter instruction must be given in a prosecution for violating Penal Code section 4500 (see *People* v. *St. Martin, supra,* 1 Cal.3d 524, 532-536), here, as we shall see, the court properly did not give such an instruction.

■ A defendant cannot be convicted of an offense (other than a necessarily included offense) not charged against him by indictment or information whether or not there was evidence at his trial to show that he had committed that offense. (*In re Hess,* 45 Cal.2d 171, 174-175 [288

---

[3]Beard argues that the court had a duty to give such an instruction on its own motion. Cannady argues that the court erred in not giving a proffered defense instruction regarding the nature of provocation that would reduce the offense to manslaughter.

P.2d 5].) "Two different types of necessarily included offenses have been recognized in this state. First, where one offense cannot be committed without committing another offense, the latter offense is a necessarily included offense. [Citation.] Second, a lesser offense is necessarily included if it is within the offense specifically charged in the accusatory pleading, as distinguished from the statutory definition of the crime. [Citations.]" (*People* v. *St. Martin, supra,* 1 Cal.3d 524, 536.) Under the first test manslaughter is not a necessarily included offense in the offense proscribed by section 4500, since, of course, the latter crime can be committed without committing manslaughter. Nor in the instant case under the second test is manslaughter a necessarily included offense in the crime proscribed by section 4500 since the indictment did not allege that the victim died as a result of the alleged section 4500 assault. This case thus differs from *People* v. *St. Martin, supra,* wherein the indictment alleged that the victim died as a result of the felonious assault.

## B. *Instruction Regarding Defense of Another*

 Beard contends that the court erred in failing to give an instruction on defense of a third person (see Pen. Code, § 694; *People* v. *Craig,* 152 Cal. 42, 50 [91 P. 997]; 1 Witkin, Cal. Crimes (1963) p. 157). He asserts that if an instruction he requested regarding that defense that the court declined to give was defective, it was the court's duty to give *sua sponte* a correct instruction on the subject. He points to his own testimony from which it appears that he entered the affray to aid Cannady, who, according to Cannady's testimony, had been attacked by Thompson. However, it also appears from Beard's testimony that he was unarmed when he entered the affray; that it was only after Beard pulled Thompson off Cannady and Thompson dropped the knife that Beard obtained the knife and stabbed Thompson; and that so far as Beard knew Cannady was gone when Beard obtained the knife. Cannady testified that he left when Beard pulled Thompson off him. When Beard was asked why he struck Thompson with the knife, Beard replied that he was scared of Thompson, that Thompson was "coming at" him with the bat, and that he knew Thompson would try to kill him. Accordingly it appears from the defense testimony that Beard assaulted Thompson with a deadly weapon in defense of himself—not in defense of Cannady. The testimony thus did not warrant an instruction on defense of another. The court gave instructions on self-defense as proposed by defendants.

IV. *Instruction on Flight*

 Defendants contend that the court erred in giving an instruction on flight[4] because, assertedly, the evidence did not warrant the instruction. They point to the fact that they were going in the general direction of a guard post after leaving the room where the alleged assault occurred, and they assert that this fact "rather than indicating consciousness of guilt, is more consistent with an attempt to report the affray . . . to the guards." However, the jury could reasonably infer that defendants' flight reflected consciousness of guilt. Flight requires neither the physical act of running nor the reaching of a far-away haven. The evidence is sufficient to support the giving of the instruction. (See, e.g., *People* v. *Hutchinson*, 71 Cal.2d 342, 346 [78 Cal.Rptr. 196, 455 P.2d 132]; *People* v. *Murguia*, 6 Cal.2d 190, 192 [57 P.2d 115]; *People* v. *Hinshaw*, 194 Cal. 1, 26-27 [227 P. 156]; *People* v. *Kessler*, 257 Cal.App.2d 812, 815 [65 Cal.Rptr. 248]; *People* v. *Jack*, 233 Cal.App.2d 446, 458-459 [43 Cal.Rptr. 566].)

Defendants also request that this court "reevaluate the efficacy of the flight instruction," and they point to matters such as a statement in *Wong Sun* v. *United States*, 371 U.S. 471, 483, footnote 10 [9 L.Ed.2d 441, 452, 83 S.Ct. 407], questioning the probative value of evidence of flight. Penal Ccde section 1127c, however, makes mandatory the giving of an instruction on flight where evidence of a defendant's flight is relied upon as tending to show guilt,[5] and the giving of such an instruction in appropriate cases repeatedly has been approved. (E.g., *People* v. *Hutchinson, supra,* 71 Cal.2d 342, 346; *People* v. *Hill,* 67 Cal.2d 105, 119-120 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Jordan,* 45 Cal.2d 697, 706 [290 P.2d 484]; *People* v. *Chessman,* 38 Cal.2d 166, 184 [238 P.2d 1001] [overruled on a different issue in *People* v. *Daniels,* 71 Cal.2d 1119, 1139

---

[4]The instruction given reads: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

[5]Penal Code section 1127c provides: "In any criminal trial . . . where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.

"No further instruction on the subject of flight need be given."

(80 Cal.Rptr. 897, 459 P.2d 225)]; see generally Witkin, Cal. Evidence (2d ed. 1966) p. 481.)

Defendants further argue that, although an instruction on flight may be proper under some circumstances it should not be given where, as here, the defense is justification since the instruction assertedly assumes justification was not proved. However, by its terms the instruction does not so assume. (See fn. 4 herein.) With respect to a similar instruction on flight, *People* v. *Daener*, 96 Cal.App.2d 827, 832-833 [216 P.2d 511], pointed out that the instruction "assumed neither the guilt nor flight of the defendant."

### V. *Asserted Misreading of Instruction*

From the reporter's transcript it appears that the court gave an instruction concerning provocation that began: "When an assault, in a *case* such as this, is committed in a heat of passion . . . ."[6] (Italics added.) The word "charge" was used in the instruction as requested instead of the italicized word, and defendants assert that as a result of "the inadvertent change" in language it could be inferred from the instruction as given that the prosecution had made out its case of assault. However, the instructions as a whole made it clear that whether there was an assault was one of the issues for the jury to decide, and the trial judge specifically told the jury, "I have not intended by anything I have said . . . to intimate or suggest what you should find to be the facts . . . and if anything I have . . . said has seemed to so indicate, you will disregard that intimation and form your own opinion without regard thereto."

The judgment entered against Cannady is modified to provide a punishment of life imprisonment instead of death and as so modified is affirmed. The judgment entered against Beard is affirmed.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

McCOMB, J.—I concur in the opinion, except that, for the reasons expressed in my dissenting opinion in *People* v. *Anderson*, 6 Cal.3d 628, 657 [100 Cal.Rptr. 152, 493 P.2d 880], I dissent from the modification of the judgment from the death penalty to life imprisonment for defendant Cannady.

---

[6]From the *clerk's* transcript it appears that the instruction as given contained the word "charge" in lieu of the word italicized above, but it will be assumed that the reporter's transcript is correct.