[No. F003799. Fifth Dist. Aug. 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ESMOND HEDRINGTON, Defendant and Appellant.

COUNSEL

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ward A. Campbell, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**WOOLPERT, Acting P. J.**—Defendant was charged with multiple violations of the Penal Code.[1] A jury found him guilty of the lesser included offense of attempted voluntary manslaughter (§§ 664, 192). His sole contention on appeal is that the jury should not have been given the flight instruction.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

## THE FACTS

In July of 1983, defendant was involved in an altercation at a Chowchilla gas station. When defendant arrived at the station he saw a onetime friend, Patterson, who had circulated a petition for the purpose of forcing defendant to leave town. Apparently there was bad blood between the two—both accused the other of making prior threats. Each produced witnesses to support their version of these threats. Insulting remarks directed at Patterson were made by defendant. Patterson exited the vehicle in which he was riding. The two exchanged words. Defendant said he wanted to kill Patterson, a statement defendant denies having made.

Prior to exiting his car, defendant removed an ice pick from the stereo on the dash. He allegedly did so at the request of his female companion because she was concerned about the safety of the children who were also passengers. However, the ice pick was not removed on two prior occasions when defendant had stopped the vehicle. Although defendant maintained Patterson hit him with karate blows, Patterson denied striking him. Defendant then threw the ice pick at Patterson. Patterson testified the ice pick went deep into his chest. Defendant was of the opinion the penetration was insignificant. Patterson removed the ice pick and chased defendant and grabbed at him.

Defendant told Patterson to go to the police. Patterson started to return to the car in which he was riding. Defendant went to his car and produced a bumper jack or similar piece of iron and approached Patterson. He told Patterson to run to the police. As the attendant telephoned police, defendant got back in his car and left. His woman companion drove. Police were notified. Defendant was arrested in Salinas. Defendant was aware police were looking for him and that bail had been set prior to his arrest.

### CALJIC INSTRUCTION NO. 2.52, FLIGHT AFTER CRIME

CALJIC No. 2.52 provides as follows: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (CALJIC No. 2.52 (4th ed. 1979) p. 59.)

 The instruction must be given *sua sponte* where evidence of flight is relied upon as tending to show guilt. (*People* v. *Williams* (1960) 179

Cal.App.2d 487 [3 Cal.Rptr. 782], cert. den. 364 U.S. 866 [5 L.Ed.2d 88, 81 S.Ct. 109]; § 1127c.)

Defendant argues it was error to give the instruction. Alternatively, he argues, if given the instruction should have been modified.

Under defendant's first theory, the verdict of attempted voluntary manslaughter, rather than attempted murder, meant the jury believed Patterson was an aggressor and that defendant acted in a heat of passion. As a result, the argument goes, defendant was justified in leaving the station, not as a matter of flight from a crime, but as a matter of protection from Patterson.

The Supreme Court has held that a defense of justification, which is what defendant made in the present case, is not inconsistent with the instruction that the jury received on flight: "Defendants further argue that, although an instruction on flight may be proper under some circumstances it should not be given where, as here, the defense is justification since the instruction assertedly assumes justification was not proved. However, by its terms the instruction does not so assume. (See fn. 4 herein.) With respect to a similar instruction on flight, *People* v. *Daener,* 96 Cal.App.2d 827, 832-833 [216 P.2d 511], pointed out that the instruction 'assumed neither the guilt nor flight of the defendant.'" (*People* v. *Cannady* (1972) 8 Cal.3d 379, 392 [105 Cal.Rptr. 129, 503 P.2d 585].)

In *Cannady,* two inmates beat and stabbed a third inmate. They were seen leaving the room where the victim was found dying. They maintained they were going to the guardhouse to report the incident, and that they acted in self-defense. (*Id.,* at pp. 383-384.) Defendant argues that the facts in *Cannady* are so dissimilar its rule cannot be applied here. We disagree.

Defendant urges application of the rule set forth in the early Supreme Court case of *People* v. *Jones* (1911) 160 Cal. 358, 369 [117 P. 176]: "[W]e have before us a case where the flight of the defendant was explained, where it was in evidence that he feared mob violence and fled to avoid it and where it was in evidence that when away from the mob he was called upon to surrender, he promptly did so. Here, certainly, it was for the jury to determine what prompted the flight and if it was prompted by fear of mob violence, as defendant says, then no element of guilty consciousness entered therein. And, yet, the jury is told that if the defendant 'did try to escape by flight' (a fact which was admitted) that that was a circumstance to be weighed as tending in some degree to prove a consciousness of guilt. Where flight is unexplained, the giving of such an instruction may be excused, though not justified, because it is within the power of the defendant to explain it and he has not done so, but where the defendant has

given a full explanation of his flight it is for the jury to say whether that explanation is true or not, untrammeled by any instructions from the court to the effect that the evidence is to be weighed by them as indicative of guilt."

Reliance on the *Jones* case is not persuasive. First, the instruction in *Jones* is not that given in the present case: "[T]he court instructed the jury as follows: 'You are instructed that the flight of a person immediately after the commission of a crime or after a crime has been committed with which he is charged, *is a circumstance* to be weighed by the jury as *tending* in some degree *to prove a consciousness of guilt,* and is entitled to more or less weight, according to the circumstances of the particular case. Evidence of flight is received, not as part of *res gestae* of the criminal act itself, but as indicative of a guilty mind—and if you believe from the evidence in this case that the defendant did try to escape by flight, it is a circumstance to be weighed by you as tending in some degree to prove a consciousness of guilt. It is not sufficient of itself to establish the guilt of the defendant, but the weight to which that circumstance is entitled is a matter for you to determine in connection with all other facts and circumstances called out in this case.'" (*Id.,* at pp. 368-369, italics added.) The instruction in *Jones* required the jury to equate a finding of flight with guilt. The instruction in the instant case made no such demand upon the jury.

Second, the flight by defendant was not fully explained. The victim stated he was walking back to the car in which he was riding when defendant fled. Therefore, defendant had nothing more to fear of Patterson. If defendant's story were true, it would have been reasonable to have expected him to notify the police himself, and report the assault upon his person. With defendant's reasoning, the instruction could *never* be given in any case where the defendant provided any justification, no matter how unbelievable in light of the other evidence, for leaving the scene of the crime.

Finally, the *Jones* opinion was handed down prior to enactment of section 1127c provided below (Stats. 1929, ch. 875, p. 1939): "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.

"No further instruction on the subject of flight need be given."

Defendant relies on *People* v. *Clem* (1980) 104 Cal.App.3d 337 [163 Cal.Rptr. 553]. The flight instruction was given even though it was clear that defendant's rape victim drove away from the scene of the crime, leaving the rapist behind. Obviously, such circumstances are quite different from the more expected flight of the suspect away from the scene to avoid apprehension. Therefore, *Clem* is not helpful in this case which follows the more customary pattern of cases which turn over the ambiguous conduct of the defendant who leaves the crime scene to the jury for determination whether consciousness of guilt should be inferred.

■ In the alternative, defendant argues that if giving the instruction was warranted, it should have first been revised. The suggested revision is but a minor variation of the original, modifying the second sentence to read: "Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such a circumstance, are matters for your determination" as opposed to "[t]he weight to which such circumstance is entitled is a matter for the jury to determine" which was given in the present case. (See *People* v. *Hill* (1967) 67 Cal.2d 105, 120, fn. 9 [60 Cal.Rptr. 248, 429 P.2d 600]; CALJIC No. 2.52, *supra.*)

The modification is derived from the language used by the Supreme Court in *People* v. *Hill, supra,* 67 Cal.2d at page 120, footnote 9. Its usage has been *suggested* as the better view for instructing where a defendant offers evidence of reasons for flight other than consciousness of guilt. (*People* v. *Guzman* (1975) 47 Cal.App.3d 380, 388 [121 Cal.Rptr. 69].)

In *Hill* the defendant *complained* about use of the very language defendant argues should have been used. The court found no merit in defendant's argument that the instruction was prejudicial because it informed the jury the evidence could be considered as showing consciousness of guilt. (*People* v. *Hill, supra,* 67 Cal.2d at p. 120.) The defendant in *Hill* clearly would have preferred the instruction given in the present case since it does not include reference to consciousness of guilt.

The *Guzman* court provides absolutely no explanation or analysis of why the *Hill* instruction might be better in cases where the defendant "offers evidence of other possible explanations for his flight." (*People* v. *Guzman, supra,* 47 Cal.App.3d at p. 388.) The unmodified CALJIC instruction provides the defendant almost the same protections as would the modification. The unmodified instruction simply leaves the jury in a position to disregard the evidence of flight altogether (by giving it no weight), but does so impliedly. The suggested instruction provides this option with more specificity.

Even if error occurred due to giving the unmodified version, under the facts of this case, such error was harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The substantial evidence of defendant's guilt makes the choice of these words in the instruction of no consequence.

The judgment is affirmed.

Best, J., and Ritchey, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.