Filed 10/14/14  P. v. Warren CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050393 |
| v. | (Super. Ct. No. FWV1300054) |
| BOBBIE WARREN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Jon D. Ferguson, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury found defendant Bobbie Warren guilty of one count of petty theft, after which in a bifurcated proceeding defendant admitted he had three prior qualifying theft-related convictions. (Pen. Code, § 666, subd. (a) [substantive offense is petty theft with three prior convictions].)[1] Defendant also admitted eight prior convictions that resulted in prison terms (§ 667.5) and that he was on bail for another crime when he committed the instant offense (§ 12022.1). The trial court sentenced defendant to nine years in prison, comprised of the upper term of three years on the substantive offense, two years for committing a crime while on bail, and four separate one-year enhancements for four of the prior prison terms. We reject defendant's contentions of instructional error and prosecutorial misconduct, and therefore affirm the judgment.

FACTS

On the morning of January 13, 2013, a U-Haul general manager found individuals sleeping in a portable storage unit. The manager told them to leave the premises. Another employee found a cell phone in the storage unit. Defendant later returned to the facility claiming he lost his cell phone in the storage unit. Someone provided the cell phone to defendant.

Meanwhile, a customer was moving furniture into a storage unit with the assistance of two movers. The customer purchased a lock for $9.95, which was placed on the bumper of a U-Haul truck by one of her movers. The lock went missing. One of the two movers followed defendant, who was walking away from the U-Haul location. The mover approached defendant and asked him to return the lock. Defendant responded that he did not have a lock. Defendant challenged the mover to a fight, but the mover refused. Defendant continued to walk away before passing an item to his female companion, who

---

[1] All statutory references are to the Penal Code.

subsequently passed the same item to the occupants of a red truck. When a police officer found defendant, he was moving away from U-Haul at a "[p]retty good walking pace." Police did not recover the lock.

Video footage played for the jury (but not provided to this court in the appellate record) apparently showed defendant approach the truck, then reach down and grab something from the specific location where the lock had been placed.

DISCUSSION

*Court Did Not Err By Providing Flight Instruction to Jury*

The court instructed the jury with CALCRIM No. 372 as follows: "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself." (See § 1127c [requiring such an instruction "[i]n any criminal trial . . . where evidence of flight of a defendant is relied upon as tending to show guilt"].)

A flight instruction "'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.'" (*People v. Roybal* (1998) 19 Cal.4th 481, 517.) As he did at trial, defendant claims this instruction should not have been provided because the evidence showed only that defendant walked away from the U-Haul location. Defendant posits the jury could not have reasonably inferred consciousness of guilt from him simply walking away from the crime scene.

It is certainly true defendant's conduct was ambiguous. Defendant had earlier been told to leave and once he retrieved his cell phone he had no reason to remain at the location. Maybe it was simply a coincidence defendant was walking away at the same time the lock disappeared.

But the timing of defendant's departure, in conjunction with defendant's interaction with the mover who asked him to return the lock and the transfer of possession of property between defendant and his companion, supports an inference that defendant was leaving the area to avoid detection. A flight instruction does not inform the jury that the defendant was fleeing the scene. It instructs the jury to decide whether defendant fled or tried to flee. The prosecution is not required to "prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.) "Flight requires neither the physical act of running nor the reaching of a far-away haven." (*People v. Cannady* (1972) 8 Cal.3d 379, 391 [approving use of flight instruction in circumstances also consistent with defendants intending to report incident to prison guards].) The court correctly provided a flight instruction, and doing so did not violate defendant's right to due process and a fair trial. (*People v. Mendoza* (2000) 24 Cal.4th 130, 179-180.)

*Prosecutor Did Not Engage in Misconduct in Rebuttal Closing Argument*

In her closing argument, defense counsel zealously advocated for an acquittal. Defense counsel suggested defendant wrongly came under suspicion for the theft because of unfair assumptions made about him by witnesses and the police. According to defense counsel, the video evidence did not show precisely what defendant grasped. Certainly, the lock was not found on defendant when he was arrested. Defense counsel pointed to credibility issues with various witnesses and alleged failures in the

police investigation of the incident. In sum, defense counsel claimed the prosecution had not met their burden to prove the case beyond a reasonable doubt.

The prosecutor began his rebuttal with the following statement, "You know, ladies and gentlemen, [defense counsel] is a very talented attorney. She's great in trial, and I mean that. It's a sincere compliment. And the bottom line with this case is that we have a defendant caught on video, stealing a lock. I'm going to let you in on a little secret, okay. Defense attorneys don't get up in closing arguments and [say the] prosecutor is right, the evidence is overwhelming, you have to convict my client. He's guilty. Guilty as hell. They don't do that. [¶] It's not the job of the defense. The job of the defense is to make do [with] what they have."

After an objection (and an off-the-record discussion), the court admonished the jury that the burden of proof was on the prosecutor and that the defense was not required to do anything.

After talking about specific pieces of evidence (and specific conjectures about the evidence made by defense counsel in her argument), the prosecutor returned to the same general theme, "And so ladies and gentlemen, what I'm reminded of when I hear [defense counsel's] closing argument is an old lawyer joke. . . . [¶] You know, if the facts aren't on your side, well, then you argue the law. If the law isn't on your side, well, then you argue the facts. And if neither the facts nor the law are on your side, what do you do then? Well, you just argue." Defense counsel again objected, but the court overruled the objection.

The prosecutor continued, "Ladies and gentlemen, that's exactly what the defense has done in this case because [neither] the facts nor the law are on their side." After discussing specific arguments made by defense counsel about the evidence and witnesses, the prosecutor added, "And, of course, the defense argues that there is not enough evidence. Ladies and gentlemen, I submit to you that I could have DNA, I could have . . . 360 degree 3-D imaging of this incident, I could have six nuns come in here and

5

testify that they saw the defendant steal that lock.  And you know what, . . . the defense attorney would get up here and say, oh, well, there's not enough evidence."  Defense counsel again objected and the court overruled the objection.

The prosecutor added in the same vein, "[I]t wouldn't matter how much evidence we had.  The defense attorney would still . . . get up here and say, you know what, there is not enough evidence."

After the close of argument, defense counsel renewed her objection to the statements made by the prosecutor.  The prosecutor stated he was not making negative comments about defense counsel, but only about her arguments.  The court agreed with the prosecutor.

On appeal, defendant reiterates his claim that the prosecutor's comments served only to attack the integrity of defense counsel and the adversary process.  (See *People v. Espinoza* (1992) 3 Cal.4th 806, 820 ["Included within the deceptive or reprehensible methods we have held to constitute prosecutorial misconduct are personal attacks on the integrity of opposing counsel"].)

"'The applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'"  [Citations.]  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"'"  (*People v. Smithey* (1999) 20 Cal.4th 936, 960.)  When a claim of prosecutorial misconduct focuses on comments made by the prosecutor to the jury, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'"  (*People v. Ochoa* (1998) 19 Cal.4th 353, 427.)  "A prosecutor engages in misconduct by misstating facts or referring

6

to facts not in evidence, but he or she enjoys wide latitude in commenting on the evidence, including urging the jury to make reasonable inferences and deductions therefrom." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 95.)

Defendant's briefs fail to address the holdings of case law rejecting similar claims to those made here. (See, e.g., *People v. Cunningham* (2001) 25 Cal.4th 926, 1002 [no reasonable likelihood jury improperly influenced by prosecutor claiming defense counsel's job was to "'create straw men'" and "'to put up smoke, red herrings,'" and that defense counsel had done a "'heck of a good job'"]; *People v. Breaux* (1991) 1 Cal.4th 281, 305 [not misconduct to liken defense argument to "law school trial tactics," i.e., "'if you don't have the law on your side, argue the facts. If you don't have the facts on your side, argue the law. If you don't have either one of those things on your side, try to create some sort of a confusion with regard to the case'"].) The argument made by the prosecutor was "improper only if it could be understood as suggesting that counsel was obligated or permitted to present a defense dishonestly." (*Breaux*, at p. 306.) Like our Supreme Court in the cases cited above, "[w]e are persuaded that, in context, the prosecutor could only have been understood as cautioning the jury to rely on the evidence introduced at trial and not as impugning the integrity of defense counsel." (*Ibid*.)

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.

8