[Crim. No. 38674. Second Dist., Div. Five. May 19, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
ELEANOR JANE CAMPOS, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jay Ruskin, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—By jury trial appellant was convicted of kidnaping (Pen. Code, § 207) and child stealing (Pen. Code, § 278). She was sentenced to state prison.

In Los Angeles, on October 31, 1978, appellant took an 11-month-old boy, Alex Thatcher, from the custody of his mother, Janet Thatcher, and boarded a bus to Mexico. The mother never saw the child again. Appellant told the authorities that she left the baby with a woman in Tijuana. Appellant also told the authorities that she did not like Janet Thatcher and was angry with her and that appellant was resentful over the fact that appellant's own child had been taken away from her three years earlier.

Appellant and Janet Thatcher had known each other one and a half years. On the evening of October 31, 1978, Janet saw appellant outside Janet's hotel. Appellant offered to take Alex to the playground and to buy Pampers and milk. Janet told appellant she had no money for Pampers and milk. Appellant told her she knew someone at the Greyhound bus station who would give her money. Janet said that she would go too. Appellant was reluctant for Janet to come along, but Janet refused to allow appellant to take the baby alone. Appellant and Janet went up to Janet's hotel room for Janet to dress and clean the baby. Janet went into the bathroom to get a washrag, and when she came out appellant and the baby had disappeared.

Appellant presented no defense at trial. Part of the prosecution case included appellant's inconsistent statements to the authorities while in custody in Monterey County in January 1980. Appellant first stated that she had left the baby with Janet Thatcher's boyfriend. She then stated "that the baby had been given to her by its mother so that she could take it to get something to eat, and that subsequently when she returned to the location of the hotel where she had received the baby that the mother wasn't there. She couldn't find any of the mother's

friends. She went looking for the mother, and when she couldn't find her at about 1:00 or 1:12 o'clock in the morning, she got on a bus and took the baby to Mexico. That subsequently she tried to reenter the United States with the baby, and because she didn't have the papers for the baby, the Immigration authorities would not let the baby back in. And she then therefore took the baby to the address of a woman in Tijuana named Carmen and left the baby with her, and that was the last time she saw the baby. [¶] .... [¶] [S]he didn't like Janet Thatcher. That she thought she was dirty, and she was angry with her. [¶] .... [¶] ... She ... was angry ... because [her own child had been taken away from her] about three years earlier, and that she resented this."

■ Appellant's main contention is that her conviction of kidnaping[1] must be reversed because her conduct can only be prosecuted as child stealing.[2] ■ Appellant relies primarily upon *People* v. *Oliver* (1961) 55 Cal.2d 761 [12 Cal.Rptr. 865, 361 P.2d 593], where the court held that if the victim is, by reason of immaturity or mental condition, unable to give legal consent to the asportation, there is no kidnaping if the taking was done for a good or innocent purpose, such as forcibly carrying a child away from the edge of a precipice to a place of greater safety. (*Id.*, at p. 765.) The asportation is kidnaping, however, "if the taking and carrying away is done for an illegal purpose or with an illegal intent." (*Id.*, at p. 768.) Here the trial court instructed the jury, in the language of CALJIC No. 9.27, which is based on *Oliver*, that appellant was guilty of kidnaping only if the act of moving the child was done for the purpose of "concealing the child." Appellant argues that if her intent to conceal the child, an element of the charge of violating Penal Code section 278, is the same intent which renders the moving of the child unlawful, then there is no separate crime of kidnaping.

---

[1]Penal Code section 207 provides in pertinent part: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county, ... is guilty of kidnaping."

As of October 31, 1978, the punishment under Penal Code section 208 for kidnaping was imprisonment in the state prison for three, four or five years. (Stats. 1976, ch. 1139, § 136, p. 5099.) Effective January 1, 1979, the term was set at three, five or seven years. (Stats. 1978, ch. 579, §§ 5, 48, pp. 1981, 1998.)

[2]Penal Code section 278, subdivision (a), provides: "Every person, not having a right of custody, who maliciously takes, entices away, detains or conceals any minor child with intent to detain or conceal such child from a parent, or guardian, or other person having the lawful charge of such child shall be punished by imprisonment in the state prison for two, three or four years, a fine of not more than ten thousand dollars ($10,000), or both, or imprisonment in a county jail for a period of not more than one year, a fine of not more than one thousand dollars ($1,000), or both."

■ *Oliver* does not support appellant's conclusion. *Oliver* simply created an exception to kidnaping where a child is moved for a good or innocent purpose. Here, of course, the evidence amply supports the conclusion that appellant took the child for base antisocial purposes, not for a good or innocent reason. Such a taking is kidnaping within the meaning of *Oliver*. (See *Parnell v. Superior Court* (1981) 119 Cal.App.3d 392, 402-403, fn. 3 [173 Cal.Rptr. 906].)

■ Child stealing has always been considered in California to be a crime against the parent, not the child. It is designed to protect parents against the anxiety and grief which necessarily follow from the taking of their children. (*Wilborn v. Superior Court* (1959) 51 Cal.2d 828, 830-831 [337 P.2d 65]; *People v. Gillispie* (1930) 104 Cal.App. 765, 767 [286 P. 502]; *People v. Torres* (1920) 48 Cal.App. 606, 608 [192 P. 175].) But it belies common sense to suggest, as appellant apparently does, that in forcibly stealing a baby from its mother, taking the baby to a foreign country and abandoning it there, appellant did not also commit a crime against the child, the crime of simple kidnaping. In *Parnell v. Superior Court, supra*, 119 Cal.App.3d at pages 402-403, footnote 3, the court interpreted *Oliver* to mean "that the kidnaping of a minor can be accomplished even if unaccompanied by force so long as it was done for an improper purpose, because a minor 'is too young to give his legal consent to being taken ....'" ■ Nothing in *Oliver* prevents appellant's prosecution for both the crime against the parent and the crime against the child. That appellant found herself facing two charges instead of one is due to permissible prosecutorial discretion, because the circumstances in this case are particularly aggravated. This case does not involve a custody battle between parents. It involves a heinous crime in which for base, vengeful reasons an outsider has stolen a baby from its mother, the baby never to be found again, and at best, abandoned in a foreign country.

■ Appellant raises several additional contentions. She argues that the trial court erred in failing to instruct, *sua sponte*, that it was a defense to kidnaping if appellant entertained a reasonable and good faith belief that the infant's mother had consented to the taking.[3] Such an instruction was not supported by any evidence. (*People v. Terry* (1970) 2 Cal.3d 362, 402 [85 Cal.Rptr. 409, 466 P.2d 961].) Even assuming that Janet Thatcher consented to appellant's taking the infant to the park

---

[3]Appellant requested CALJIC No. 9.28, but that instruction refers to the consent of the person alleged to have been kidnaped.

and to get Pampers and milk, appellant could not reasonably believe that she had consent to take the child to Mexico to be abandoned. (*People* v. *Mayberry* (1975) 15 Cal.3d 143, 155 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Moore* (1945) 67 Cal.App.2d 789, 791 [155 P.2d 403].)

■ Appellant next contends the trial court erred in instructing the jury on flight.[4] Appellant contends that her conduct in going to Mexico "could not properly be construed as flight after crime. It was the crime." There is no merit to this contention. The instructions left it to the jury to determine whether there had been flight. The instruction assumes neither the guilt of the accused nor that flight occurred. (*People* v. *Cannady* (1972) 8 Cal.3d 379, 391-392 [105 Cal.Rptr. 129, 503 P.2d 585].) The jury could reasonably construe appellant's conduct as flight. (See *People* v. *Ramirez* (1980) 109 Cal.App.3d 529, 543 [167 Cal. Rptr. 174].) Appellant took the child all the way to another country, and there is no evidence appellant returned to her own neighborhood. Janet Thatcher never saw appellant again until trial. When apprehended, appellant apparently was in the Monterey area.

■ Finally,[5] appellant contends the trial court erred in excluding defendant's exhibit A, a signed statement Janet Thatcher made to the police. The statement was offered to impeach Janet Thatcher's testimony about whether appellant was babysitting for her on the day of the kidnaping.

Even assuming, however, that a proper foundation was laid for the evidence and that it would have constituted proper impeachment, there was no prejudicial error in its exclusion. Whether appellant had babysat for Alex and whether Janet Thatcher consented to appellant's taking Alex to the park and for Pampers and milk were collateral issues, since obviously such consent never extended to taking the child to Mexico to be abandoned. Defense counsel successfully exposed a number of inconsistencies in cross-examining Janet Thatcher, including the concession

---

[4]The court instructed the jury in the language of CALJIC No. 2.52 that "[t]he flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

[5]At oral argument appellant abandoned her additional contention of prosecutorial misconduct.

that in her prior testimony to the court she had testified she allowed Alex to leave with appellant. The trial court was within its discretion in limiting further impeachment, and in any event such exclusion was not prejudicial in the circumstances of this case. (*People* v. *Lavergne* (1971) 4 Cal.3d 735, 744 [94 Cal.Rptr. 405, 484 P.2d 77].)

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 4, 1982. Kaus, J., did not participate therein.