[Crim. No. 5777. Fifth Dist. Jan. 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER RAY COBB, Defendant and Appellant.

## COUNSEL

Janice M. Lagerlof, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOOLPERT, J.**—Appellant was convicted of being an ex-felon in possession of a handgun in violation of Penal Code section 12021. He complains that he was forced to undergo jury trial and imprisonment because of an arbitrary local court rule. Several days prior to trial he accepted the district attorney's offer of a county jail commitment. However, the court refused to consider the plea bargain because it was untimely. We are asked to hold that plea bargains must be considered by the court at any time.

On the night of February 6, 1981, two police officers were on patrol in a marked police vehicle when they saw a car parked on the wrong side of the street. The driver was talking to a woman standing nearby. As the police car came closer, the parked vehicle pulled out and sped away. Both vehicles came to a stop soon after the overhead lights on the patrol car were activated.

Appellant got out of the car in response to a request for identification. One officer noticed an open beer can on the transmission hump. While leaning in to check the can, he saw a handgun on the floorboard below the left front seat. One bullet was observed in the chamber of the gun and one in the magazine. Appellant was arrested.

In his defense, appellant testified that while visiting his aunt, he lent his car to her housekeeper, who, unbeknown to appellant, carried a gun for her own protection. She left the gun on the floorboard of the car before entering a store and forgot to remove it when she returned. Appellant testified he was unaware of the presence of the gun at the time of his apprehension. The housekeeper confirmed these circumstances. However, the jury thought otherwise and found him guilty. He was then sentenced to prison for the upper base term of three years.

In passing sentence, the court noted appellant's history of robberies involving the use of firearms, a prior prison term not charged as an enhancement, two "ninety-mile-an-hour chases, and repeated use of guns . . . [and] threaten[ing] the innocent victim with a butcher knife in his home while perpetrating a burglary." Outside the presence of the jurors, appellant had admitted the charged prior armed robbery conviction.

## The "Fresno Rule"

In judicial circles it is well known that in certain counties the presiding judge does not permit last moment plea bargaining. In other counties such a rule does not exist, or it exists more in theory than in reality, the judges finding it expedient to take pleas at any time. The record indicates that in the Fresno County Superior Court, ultimate management of the criminal calendar is in the hands of the presiding judge, who, by agreement of the judges of the court, requires a readiness conference to be held a week or so prior to trial. It is held to assure that the parties are ready for trial and to advise them that no plea bargain will be considered after that time.

Generally, such deadlines are supported as a means of reducing the confusion, hardship and inconvenience inherent in calling calendars. The priority of the criminal calendar and the frequency of pleas in lieu of trials often place civil litigants in a trailing position, which on trial day is at best an uncertain one. When pleas are taken at this time, the practice may well have a domino effect on other cases. It may leave courtrooms vacant if the calendar judge has failed to overschedule trials. Excusing unused jurors or, when expected pleas do not materialize, announcing there are insufficient judges or courtrooms for the balance of the calendar, is an unpleasant judicial task.

In this case, appellant and counsel appeared at the readiness conference. They were ready for trial; no plea was offered. They were well aware that henceforth any plea would have to be, as defense counsel stated, "straight up to the charges as alleged without any conditions."

The problems before us arose because *after* the readiness conference, the district attorney was advised that the gun found in the car and removed for evidence purposes had been destroyed. He proposed a plea bargain which called for no more than a local time commitment. Before defense counsel accepted the offer, the district attorney learned that the gun had not been destroyed. He did not try to revoke the offer. The expected acceptance came soon thereafter. Feeling himself morally bound by the agreement, the district attorney joined with defense counsel in seeking its presentation to a willing judge.

Two judges were approached and each refused to consider the plea. No record was kept when the presiding judge discussed and refused the plea. It is unclear whether he rejected it solely because of its untimeliness or also because he was told the gun had been located and the conditions for the offer had changed. We accept counsel's representation that the Fresno time rule was the reason.

As trial commenced, the plea issue was discussed again. The trial judge was not willing to countermand the presiding judge's decision. Appellant argued that he had a constitutional right to have a judge consider the plea bargain without any time restriction. His authority was simply "due process." He now urges that the Fresno rule prevents the exercise of discretion, is a form of coercion, and does not "necessarily . . . increase the efficiency of the criminal process."

■ The Standards of Judicial Administration adopted by the Judicial Council, effective January 1, 1972, authorized this practice. Section 10(a)(7) provides in part: "Finally, the court should adopt a rule or policy providing that the readiness conference is the last possible point of negotiation and that thereafter a defendant may plead only to the principal charge against him."

The Judicial Council is authorized to "adopt rules for court administration, practice and procedure, not inconsistent with statute. . . ." (Cal. Const., art. VI, § 6.) Local court rules may be adopted if "not inconsistent with law or with the rules adopted and prescribed by the Judicial Council." (Gov. Code, § 68070.) We find no inconsistent constitutional or statutory law or rule which would nullify the standard and local rule to which appellant objects.

The defendant in *North Carolina* v. *Alford* (1970) 400 U.S. 25, 38-39 [27 L.Ed.2d 162, 171-172, 91 S.Ct. 160], accepted a plea offer in order to avoid the death penalty. On appeal, he urged the plea agreement should not have been offered him and that instead, full proof of the crime should have been required by the trial process. In response, the Supreme Court held: "The States in their wisdom may take this course by statute or otherwise and may prohibit the prac-

tice of accepting pleas to lesser included offenses *under any circumstances.*" (*Id.*, at p. 39 [27 L.Ed.2d at p. 172], italics added.) On the subject of unconditional guilty pleas, the court also noted that a criminal defendant "does not have an absolute right under the Constitution to have his guilty plea accepted by the court [citations], although the States may by statute or otherwise confer such a right." (*Id.*, fn. 11.) The Fresno rule sets no time limit on taking unconditional pleas.

The California rules on plea bargaining have a parallel in the federal rules. Rule 11(e) of the Federal Rules of Criminal Procedure (18 U.S.C.), adopted by Congress in 1975, and amended in 1979, outlines the proper procedure to be followed in taking a "plea agreement."[1] When the rule was proposed, federal judges expressed concern that its language mandated the court to consider all offers. To lay this fear to rest, the House Judiciary Committee Report stressed that the rule ". . . permits each federal court to decide for itself the extent to which it will permit plea negotiations to be carried on within its own jurisdiction. No court is compelled to permit any plea negotiations at all." (*United States* v. *Stamey* (4th Cir. 1978) 569 F.2d 805, 806.)

The refusal of a judge to consider a plea bargain one day after the expiration of the deadline fixed by the court for plea negotiations was upheld in *United States* v. *Ellis* (5th Cir. 1977) 547 F.2d 863, 868. The prosecutorial prerogative and the rights of the defendant under rule 11(e) were considered. Approval was given to the trial court view that "strict adherence to [the court's] deadline order was necessary for proper scheduling of cases and to save time, difficulty and expense to jurors and witnesses who would otherwise have to be summoned needlessly to attend court sessions." It was also noted that one exception would lead to another, "with the result that the deadline would become meaningless." (*Ibid.*)

---

[1]Rule 11 prescribes the plea alternatives, advice to be given by the court, the duty of the court to ensure that the plea is voluntary, and then the plea agreement procedure and need for a proper factual basis determination and record of the proceedings. We quote only subparagraphs (2) and (5) of rule 11(e): "(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement [moves for dismissal of other charges or agrees on a specific sentence], the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement [recommends a particular sentence or agrees not to oppose the defendant's request for a particular sentence], the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

". . . . . . . . . . . . . . . . . . . . . . . . .

"(5) Time of Plea Agreement Procedure. Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court."

Section 1192.5 of the Penal Code was enacted in 1970.[2] As subsequently amended, it sets forth "guidelines which the trial court can utilize in receiving and considering plea bargains involving pleas to lesser offenses." (*People* v. *West* (1970) 3 Cal.3d 595, 608 [91 Cal.Rptr. 385, 477 P.2d 409].) However, as in the case of the federal rule, there is no reference to the court's discretion to refuse to consider such a plea at all, or within certain time limits. Federal courts have rejected the suggestion that similar language compels the courts to hear and consider all plea bargains. (*United States* v. *Moore* (8th Cir. 1981) 637 F.2d 1194, 1196.)

California decisions emphasize that successful judicial administration depends upon a positive attitude toward plea bargaining. After the enactment of Penal Code section 1192.5, it was held to be an abuse of discretion and a violation of the spirit of the section to refuse to hear an offered plea bargain on the following basis stated by the trial judge: " '[L]ooks to me like the possibility that the people who have violated the law are dictating the disposition of their case rather than the Judge. . . .' " (*People* v. *Smith* (1971) 22 Cal.App.3d 25, 29 [99 Cal.Rptr. 171].)

Prosecutors have drawn their share of adverse comment: "On the other hand, sentencing discretion wisely and properly exercised should not capitulate to rigid prosecutorial policies manifesting an obstructionist position toward all plea bargaining irrespective of the circumstances of the individual case. As the calendars of trial courts become increasingly congested, the automatic refusal

---

[2]That section reads: "Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, other than a violation of subdivision (2) or (3) of Section 261, or Section 264.1, Section 286 by force, violence, duress, menace or threat of great bodily harm, subdivision (b) of Section 288, Section 288a by force, violence, duress, menace or threat of great bodily harm, or Section 289, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.

"Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe that that specified in the plea and the court may not proceed as to such plea other than as specified in the plea.

"If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.

"If such plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available.

"If such plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals." (As amended in 1974 and 1979.)

of prosecutors to consider plea bargaining as a viable alternative to a lengthy trial may militate against the efficient administration of justice, impose unnecessary costs upon taxpayers, and subject defendants to the harassment and trauma of avoidable trials. (*People* v. *Williams, supra,* 269 Cal.App.2d 879, 884.) A court may alleviate this burden placed upon our criminal justice system if this can be accomplished by means of a permissible exercise of judicial sentencing discretion in an appropriate case." (*People* v. *Orin* (1975) 13 Cal.3d 937, 949 [120 Cal.Rptr. 65, 533 P.2d 193].)

In *People* v. *Hill* (1974) 12 Cal.3d 731, 768 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another point in *People* v. *DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872], the defendant's role in plea bargaining was examined, with this conclusion: "Consequently, only the most compelling reasons can justify any interference, however slight, with an accused's prerogative to *personally* decide whether to stand trial or to waive his rights by pleading guilty." (Original italics.) The reference was to plea bargaining as such and not to the timing of the plea.

It appears that the competing interests of accurately scheduling court calendars and judiciously taking pleas to avoid trial can be accommodated while reasonably restricting pleas to certain time periods. The purpose of improving calendar management justifies the setting of deadlines beyond which no conditional plea may be taken. However, contrary to the federal rule apparently permitting an anticonditional plea policy irrespective of time, we hold that section 10(a)(7) of the Standards of Judicial Administration limits the preclusion period to that reasonable time which follows the readiness conference and ends upon the completion of trial. The justification for the rule is as applicable after commencement of trial as just before trial.[3]

In response to appellant's argument that the basis for the plea bargain arose *after* the readiness conference, we hold that the standard does not preclude the exercise of discretion at any time under exceptional circumstances. In this case, the judges concerned had that authority and were properly consulted. Although we have no record of the exact conversation, we have been shown no abuse of discretion. By the time the offer was presented to the court, the gun had been found. Despite the fact that the district attorney considered himself to be "morally bound," the error did not justify an exception to the rule against late conditional pleas. Since the gun had been found, the situation was the same as it had been at the time of the readiness conference when both parties had chosen to go to trial.

---

[3]We are not here concerned with the jurisdiction of the trial judge or the effect of a trial judge's disregard of such a rule.

Appellant's criminal background was such that the presiding judge, if made aware of it, would have considered the probability of the sentencing judge rejecting the plea to be too great to justify taking the plea and unsetting the trial. "[I]mplicit in the language of section 1192.5 is the premise that the court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea." (*People* v. *Johnson* (1974) 10 Cal.3d 868, 873 [112 Cal.Rptr. 556, 519 P.2d 604].) Therefore, whether the plea was rejected for reasons of timeliness alone, or upon consideration of the availability of the gun or of the defendant's criminal history, the court acted within its proper discretion.[4]

Although not argued by the parties, an equal protection of the law theory is urged by the dissent. It is a good point to discuss and deserves a response. We agree that there are variations from county to county regarding taking late plea bargains.

Plea bargaining, which may in cases such as this be more properly termed "sentence bargaining," has been given judicial sanction only recently. (*People* v. *West, supra,* 3 Cal.3d 595, 605.) It has no constitutional origin and little statutory recognition. Any attempt to find equality in its practice is doomed to failure. On the federal level the lack of uniformity is understandable in light of repeated statements such as: "The States and the Federal Government are free to abolish guilty pleas and plea bargaining; but absent such action, as the Constitution has been construed in our cases, it is not forbidden to extend a proper degree of leniency in return for guilty pleas." (*Corbitt* v. *New Jersey* (1978) 439 U.S. 212, 223 [58 L.Ed.2d 466, 477, 99 S.Ct. 492].) Generally, unless there is an overriding national interest, equal protection is implied in the Fifth Amendment due process clause. (*Hampton* v. *Mow Sun Wong* (1976) 426 U.S. 88, 100 [48 L.Ed.2d 495, 506, 96 S.Ct. 1895].)

We can compare variations between counties in California to permitted variations *within* the same federal court. For example: "In our opinion each individual judge is free to decide whether, and to what degree, he will entertain plea bargains, and his refusal to consider any plea bargaining whatsoever will not vitiate a guilty plea which has otherwise been knowingly and voluntarily entered." (*United States* v. *Jackson* (4th Cir. 1977) 563 F.2d 1145, 1148.)

In California, plea bargaining is controlled as to "how" (§ 1192.5), and "when" (the suggestion in the standard and the various requirements of local rules). The "if" cannot be legislated with any certainty because of prosecutorial discretion in selecting the original charges and the limitations obvious in "bargaining" without the prosecutor's express approval. (*People* v. *Orin,*

---

[4]Plea bargaining is prohibited or limited in certain circumstances by constitutional and statutory law. We are here concerned only with the timely offer of plea bargains when otherwise permitted by law.

*supra,* 13 Cal.3d 937, 942-949.) Even between codefendants the law has not contemplated equality in plea bargaining. A grant of immunity, or a less formal plea agreement, which is arranged to obtain the testimony of one defendant against the other, may greatly distort the end result so that one defendant may be jailed and the other imprisoned. Plea bargains, having such uncertain conceptions, are subject to reasonable time constraints on their delivery to the court.

## OTHER ISSUES

■ We do not find appellant's other claims of error to be of substance. Over his objection, appellant's 1977 robbery conviction was admitted into evidence before the jury. It was properly received for impeachment purposes, with the court's limitation that the jury was not informed that the robbery was an armed one. The court also excluded mention of a 1973 robbery. Though robbery may have less correlation to honesty and veracity than crimes such as perjury and embezzlement, and though it is of the disfavored assaultive kind, under these circumstances there was no error. (*People* v. *Bailes* (1982) 129 Cal.App.3d 265, 274 [180 Cal.Rptr. 792].) His stipulation to ex-felon status did not shield appellant from impeachment when he testified. (*People* v. *Faught* (1981) 124 Cal.App.3d 848, 857 [177 Cal.Rptr. 637].)

■ There was a question whether appellant saw the officers approaching the vehicle prior to the time he rapidly drove away. He complains that the trial court erred in giving the standard instruction on flight.[5] The instruction was given under proper circumstances. It assumes nothing; it merely instructs the jury that if there was flight, there may be an inference of a consciousness of guilt. (*People* v. *Cannady* (1972) 8 Cal.3d 379, 391-392 [105 Cal.Rptr. 129, 503 P.2d 585]; *People* v. *Campos* (1982) 131 Cal.App.3d 894, 900 [182 Cal.Rptr. 698].)

■ Finally, appellant contends that the imposition of the upper base term was improper. As noted by the trial court, appellant was on parole at the time of the offense. His prior record has been mentioned earlier in this opinion. He was properly sentenced.

The judgment is affirmed.

Stanton, J.,* concurred.

---

[5]"The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (CALJIC No. 2.52.)

*Assigned by the Chairperson of the Judicial Council.

**FRANSON, Acting P. J.**—I respectfully dissent.

The majority have framed the issue: Does the "Fresno rule" requiring that plea bargains be presented to the court no later than the readiness conference take precedence over appellant's right to have the court consider the bargain on its merits? In the present case, the rejection of the bargain because of its untimeliness under the local rule deprived appellant of the possibility of receiving up to one year county jail time rather than three years in the state prison.

As I shall explain, Penal Code section 1192.5 and the California cases construing the statute give appellant the right to have the bargain considered by the court. The Fresno rule must yield to this statutory right. Furthermore, the enforcement of the rule denied appellant the equal protection of the laws as required by the 14th Amendment to the United States Constitution and the California Constitution (arts. IV, § 16; I, §§ 11, 21).

Before explaining why appellant was entitled to have his "untimely" plea considered by the trial court, I wish to make several preliminary comments to place the matter in context: First, the judgment could possibly be affirmed if the record showed the presiding judge had been informed of the fact the gun had been recovered by the prosecutor and that appellant had a prior record of violent crime involving the use of handguns. Under those circumstances, it could be said the trial court considered the bargain in the light of the circumstances of the case and exercised its discretion in rejecting it. Nothing in Penal Code section 1192.5 as I read it compels a trial court to approve a proposed bargain even conditionally. Unfortunately, as the majority opinion acknowledges, the record shows that on July 16 the presiding judge rejected the bargain out of hand because of its untimeliness, and on July 20 the trial judge rejected the bargain solely because he did not wish to countermand the presiding judge's order. Neither judge exercised his discretion to reject the plea on its merits as required by Penal Code section 1192.5.

Second, despite appellant's prior record and the recovery of the gun, the law does not permit a reviewing court to find harmless error where a trial court failed to exercise the discretion vested in it by statute. (The failure to exercise required judicial discretion is an abuse of discretion.) We cannot say as a matter of law that no rational judge could find that one year in the county jail was not sufficient punishment for appellant in this case.

Third, Proposition 8, the so-called "victim's bill of rights" approved by the electorate on June 8, 1982, has no bearing on this case. Violation of Penal Code

section 12021, ex-felon in possession of a handgun, is not a "serious felony" as defined in the initiative prohibiting plea bargaining.[1]

### The Statutory Right to Plea Bargain

The California Legislature and the courts of this state have consistently approved and encouraged plea bargaining. (Pen. Code, § 1192.5; *People* v. *Hill* (1974) 12 Cal.3d 731, 768 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another point in *People* v. *DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *West* (1970) 3 Cal.3d 595, 604-611 [91 Cal.Rptr. 385, 477 P.2d 409]; *People* v. *Smith* (1971) 22 Cal.App.3d 25, 30 [99 Cal.Rptr. 171]; see also *Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463].) As stated in *People* v. *West, supra,* at page 604: "Plea bargaining has become an accepted practice in American criminal procedure, 'an integral part of the administration of justice in the United States' [citation], 'essential to the expeditious and fair administration of justice.' [Citation.] 'The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney.' [Citation.]

"Both the state and the defendant may profit from a plea bargain. The benefit to the defendant from a lessened punishment does not need elaboration; the benefit to the state lies in the savings and cost of trial, the increased efficiency of the procedure, and the further flexibility of the criminal process. Numerous courts, commissions, and writers have recognized that the plea bargain has become indispensable to the efficient administration of criminal justice. Professor Newman, in his study of plea bargaining, notes that 'A steady flow of guilty pleas and the corresponding avoidance of the time, expense, and uncertainty of trials is important to the smooth functioning of most criminal courts. . . . Plea negotiation, with bargains duly honored, is a device necessary to administration if a steady flow of guilty pleas is to be maintained.'" (Fn. omitted.)

Penal Code section 1192.5 and the cases construing the statute force me to conclude that regardless of when a plea bargain is presented to a court, the court must exercise its discretion by considering the bargain in the light of the substantive facts of the case; it may not reject the bargain out of hand solely because of the tardiness of its presentation under a local rule. As stated in *People* v. *Smith, supra,* 22 Cal.App.3d 25 at page 30: "The entire thrust of the language of section 1192.5 calls for the trial court to recognize the law as so ex-

---

[1]Penal Code section 12021 is a hybrid crime "punishable by imprisonment in the state prison, or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both."

pressed therein. Although it is within the discretion of the court to approve or reject the proffered offer, the court may not arbitrarily refuse to consider the offer. . . ." Nothing is more arbitrary than depriving a defendant of the right to plead to a lesser punishment because of a local readiness conference deadline rule, particularly when the prosecutor did not make the offer until the eve of trial.

In *People* v. *Hill, supra,* 12 Cal.3d at page 768, our Supreme Court states: ". . . only the most compelling reasons can justify *any interference, however slight,* with an accused's prerogative to *personally* decide whether to stand trial or to waive his rights by pleading guilty." (First italics added; second italics original.) Although the quoted language was made in the context of deciding whether the defendant's plea should be set aside because the trial court erred in failing to suppress evidence, the principle that there should be no interference with the defendant's right to plead guilty absent compelling reasons means that in the absence of proof of the most persuasive circumstances the existence of which is difficult to comprehend, the trial court must consider the bargain whenever it is presented. "Compelling reasons" as used in *People* v. *Hill, supra,* means something more than administrative convenience to the court and other litigants.[2] Too much is at stake, "including the loss of [the defendant's] liberty and even death." (*Ibid.*)

The fallacy of the majority opinion is that it exalts an administrative rule ostensibly designed to expedite trials over a defendant's statutory right to seek a lesser punishment with the prosecutor's consent—with potentially disastrous consequences to the defendant. This is not a battle between the People and the defendant since the People have agreed to the bargain—rather it is conflict between a judicial desire for administrative efficiency and a defendant's right to have the bargain considered by the court. The defendant's right should prevail.

The Standards of Judicial Administration (§ 10(a)(7) enacted by the Judicial Council in 1972) constitute only policy guidelines "recommended" to the trial courts as a means to insure the prompt disposition of criminal cases. The standards are not court rules. The standards cannot override the statutory and case law giving a defendant the right to plead to a particular disposition of his case provided the prosecutor and the court approve the disposition. The Judicial

---

[2]We should judicially note the fact that presiding judges in metropolitan courts such as Fresno County, trail cases on the dates set for trial for one, two, three days or longer so that if a last minute plea is entered, a trailing case may be assigned into a department that would otherwise be occupied by a criminal trial. Sound arguments can be made that strict enforcement of a rule requiring plea bargains be presented no later than the trial confirmation hearing—in this case almost two weeks before the original trial date and seventeen days before the actual trial date—is counterproductive to the prompt disposition of other cases. Cases are tried that otherwise would be settled before trial. The majority's reference to the "unpleasant judicial task" of excusing unused jurors when expected pleas do not materialize is totally redundant to a defendant's right to have his plea considered by the trial court.

Council has no authority to promulgate rules for court administration which conflict with a statute. (Cal. Const., art. VI, § 6.) And, of course, local rules may not be adopted which conflict with statute or case law. (Gov. Code, § 68070.)

The federal authority cited by the majority is not on point. The language in *North Carolina* v. *Alford* (1970) 400 U.S. at page 39 [27 L.Ed.2d 162, 172, 91 S.Ct. 160] that "[t]he States . . . may prohibit the practice of accepting pleas to lesser included offenses under any circumstances" was written in the course of deciding whether the defendant should be permitted to withdraw a negotiated plea to second degree murder because of asserted coercion resulting from the threat of the death penalty if he had gone to trial. The court of appeals had found that the defendant's guilty plea was involuntary because it was motivated principally by fear of the death penalty. The Supreme Court merely held the trial judge did not commit constitutional error in accepting defendant's guilty plea. I would view the quoted language as dicta in relation to the question before us. Also, the Supreme Court's footnote statement (400 U.S. at p. 38, fn. 11 [27 L.Ed.2d at p. 172]) to the effect that a defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, although the states may by statute or otherwise confer such a right, is not germane to the question before us. The issue is not whether appellant had the constitutional right to have his guilty plea accepted by the court but rather whether under the California statute (Pen. Code, § 1192.5) and the California cases interpreting the statute he had the right to have the trial court at least consider the plea bargain before rejecting it.

*United States* v. *Stamey* (4th Cir. 1978) 569 F.2d 805 and *United States* v. *Ellis* (5th Cir. 1977) 547 F.2d 863, although pertinent under rule 11(e) of the Federal Rules of Criminal Procedure (18 U.S.C.), constitute no authority under the California statutory scheme for plea bargains. (Pen. Code, § 1192.5.)

*Equal Protection Denial*

The enforcement of the Fresno County rule deprived appellant of the equal protection of the law as required by the 14th Amendment to the federal Constitution. As the majority opinion acknowledges, the rule does not exist in all of the counties of our state and in those counties where it does exist, the judges often find it expedient to take pleas "at any time." Thus, appellant was deprived of the right that other defendants *in identical circumstances* have to present the bargain to the court on the eve of trial. Appellant, having been charged and tried in Fresno County, was deprived of the very right that other similarly situated defendants have in other counties.

Judicial action constitutes state action for 14th Amendment purposes (*Shelley v. Kraemer* (1948) 334 U.S. 1, 14 [92 L.Ed. 1161, 1181, 68 S.Ct. 836, 842, 3 A.L.R.3d 441]; see also 13 Cal.Jur.3d, Constitutional Law, § 306, p. 564). The Fresno rule has the same effect as would a state statute prohibiting or restricting the right to plea bargain in a particular county. Such a statute would also violate the state Constitution which limits the Legislature's power to pass special or local laws. (Cal. Const., art. IV, § 16; 13 Cal.Jur.3d, Constitutional Law, § 308, p. 569 et seq.) Only if the state should enact legislation requiring that all plea bargains throughout the state be presented no later than the readiness conference would there be uniformity in the law.

Appellant's loss of the possibility of being sentenced to one year in county jail rather than three years in the state prison involves a fundamental right of liberty which is entitled to constitutional protection. For equal protection analysis, the burden is upon the state to prove a compelling state interest for the disparity in treatment of similarly situated defendants. I find no compelling state interest in requiring felony defendants in Fresno County to make their pleas no later than two weeks before trial when similar defendants in other counties of our state may offer their plea at any time before trial. The issue is not whether the state may show a compelling interest to expedite trials but whether there is a compelling interest justifying the treatment of defendants in different counties in different ways.

Again, the majority's reference to the disparate rules governing plea bargaining in the federal courts is not germane for several reasons. First, there is no equal protection clause applicable to the federal government; only when the discrimination rises to the level of a due process denial does the Constitution limit the power of the federal courts (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 335, p. 3629).

Second, we are concerned in the present case with the question whether identically situated defendants are treated equally under *California law* once a plea bargain has been presented to the court. The majority's reliance on *United States* v. *Jackson, supra,* 563 F.2d 1145 is misplaced. *Jackson* holds that under rule 11(e) of the Federal Rules of Criminal Procedure (18 U.S.C.) federal judges are not required to consider a plea bargain at all. ". . . each individual judge is free to decide whether and to what degree he will entertain plea bargains." (563 F.2d at p. 1148.) No such right is given to state judges under California law, and even if it did I suggest that such a statute would still violate equal protection.

Finally, the majority has made no attempt to demonstrate that the fundamental right to liberty is not involved nor have they argued that appellant is not similarly situated to defendants outside of Fresno County. The fact one

codefendant may receive immunity or a lesser sentence through plea bargaining is immaterial to the issue of equal protection.

I would reverse the judgment and remand the matter to the trial court with directions to consider appellant's plea bargain on its merits.

Appellant's petition for a hearing by the Supreme Court was denied March 23, 1983. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.