111 Cal.Rptr.2d 909 (2001)
92 Cal.App.4th 600
In re MICHELE D., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
MICHELE D., Defendant and Appellant.
No. B143803.
Court of Appeal, Second District, Division Two.
September 26, 2001.
Review Granted December 12, 2001.
*910 Jeralyn Keller, Pasadena, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Jennifer Jadovitz, Deputy Attorney General, for Plaintiff and Respondent.
COOPER, J.

INTRODUCTION
This is an appeal from the sustaining of a petition filed pursuant to Welfare and Institutions Code section 602 finding that Michele D. (appellant) violated Penal Code[1] section 207(a) (kidnapping) and finding true an allegation that appellant kidnapped a child under the age of 14 years with the intent to permanently deprive *911 the parent of custody of the child. (§ 667.85.) Appellant contends that the finding of the trial court was not supported by substantial evidence.
We hold that the abduction of a nonresisting infant or child without the knowledge or permission of the parent constitutes kidnapping. The fact that "force," as commonly used to mean the application of physical strength, violence, compulsion, or constraint, was not utilized does not alter this conclusion. We shall therefore affirm the decision of the juvenile court sustaining the petition.

STATEMENT OF CASE
A petition filed pursuant to Welfare and Institutions Code section 602 alleged that Michele D. had violated section 207, subdivision (a), by kidnapping Cameron S. (Cameron), age 12 months.[2] The petition further alleged that appellant kidnapped a child under the age of 14 years with the intent to permanently deprive the parent of custody of the child. (§ 667.85.) The court found the allegations of the petition to be true.
Appellant's maximum period of confinement was set at 13 years. The court recommended that appellant be placed at Penny Lane, a juvenile facility with special expertise in counseling troubled adolescents. Appellant was awarded 120 days of predisposition credit. The court imposed a restitution fine of $100 and ordered appellant to submit a blood specimen, a saliva sample, a right thumbprint and a full palm print per section 296.
Appellant filed a timely appeal of the order sustaining the petition.

STANDARD OF REVIEW
When the sufficiency of the evidence to support a criminal conviction is challenged on appeal, the appellate court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidenceevidence that is reasonable, credible, and of solid valuesuch that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (People v. Marshall (1997) 15 Cal.4th 1, 34, 61 Cal.Rptr.2d 84, 931 P.2d 262.) The same standard applies to proceedings pursuant to Welfare and Institutions Code section 602. (In re Jesse L. (1990) 221 Cal.App.3d 161, 165, 270 Cal.Rptr. 389.)

STATEMENT OF FACTS

Prosecution Evidence
Appellant became acquainted with Dawn S. (Dawn) and her husband through mutual friends approximately one year before the incident. Dawn had a 12 month old infant daughter, Cameron, the victim of the kidnapping. In the year before this incident, appellant was a frequent visitor at Dawn's home. In March 2000, appellant was invited to stay with Dawn's family due to troubles at her own home. A few days before the incident, appellant suffered a miscarriage and on the day of the incident was still bleeding heavily.
On March 16, 2000, Dawn, Cameron and appellant took a bus to Pic `N Save in West Covina to do some shopping. Before they left, Dawn noticed that appellant appeared to be very disturbed and looked as though she had been crying. The threesome arrived at the store around 5:30 p.m.
The three started off shopping together, but appellant eventually went in a different *912 direction while pushing Cameron in a stroller. Dawn and appellant browsed the store separately for about an hour and then ran into each other. Appellant asked Dawn to pay for some toothpaste or mouthwash for her. Dawn agreed and appellant, with Cameron in the stroller, went to get the items.
Approximately one hour later, Dawn became concerned and began to look around the store for appellant and Cameron. She found an empty stroller in one of the aisles. Appellant's purse and a baby bottle were in the stroller. Dawn went to the store's information booth and asked if they had seen appellant. They had not seen appellant or the infant.
Dawn became frightened and panicky and asked Pic `N Save to call the police while she tried to reach her husband. Detective Michael Ferrari (Ferrari) of the West Covina Police Department responded to the call. After a brief interview in the store, he asked Dawn to go to the police station for a more in-depth interview. Ferrari drove in his patrol car and Dawn went to the station with her husband.
James Lynch (Lynch) was the assistant service manager at Penske Jaguar, an automobile dealership located approximately one and one-half miles from Pic `N Save. Around 7:00 p.m., while preparing to leave the dealership, Lynch noticed a woman with a baby. The woman was walking down a street in a closed area between his company's two dealerships. Finding this odd, Lynch notified the dealership's security guard, Edward Anaya (Anaya.)
Anaya went to investigate and located appellant holding Cameron in the front of the dealership. Anaya approached appellant and asked to speak with her. He told her he was concerned because she was in the dark alley, which was off-limits to non-employees. He noticed that appellant's eyes were red, as if she had been crying, and she seemed scared or upset. Anaya thought appellant may have been involved in a domestic dispute and took her into the dealership to talk with her and see if he could help her.
Appellant told Anaya that she was trying to find a ride to Fullerton, California. Anaya contacted the police and reported that a woman and child were at the dealership. Ferrari was notified of Anaya's call while en route from Pic `N Save to the stationhouse. Ferrari went to the police station, picked up Mr. and Mrs. S. and took them to Penske Jaguar. On arrival, Dawn identified appellant. Dawn recovered Cameron. Cameron was examined at Queen of the Valley Hospital and determined not to be injured in any way.
Appellant was arrested and taken to the police station. At the station, Ferrari advised appellant of her constitutional rights. Appellant indicated she understood her rights and agreed to speak with Ferrari.
During a videotaped interrogation, appellant told Ferrari that, before leaving the Pic `N Save, she told Dawn she was going outside to smoke a cigarette and asked for money to buy a drink. Dawn gave appellant some money and asked her to take Cameron with her. Appellant said she went outside, smoked a cigarette and then boarded a bus.
Appellant first told Ferrari she was babysitting Cameron, but later admitted she intended to take Cameron to a friend's house in Fullerton. She took the child with the hope that she could raise her herself. Ferrari reported that appellant's moods varied between emotional, angry, confused, inattentive or moody during the interview.

Defense Evidence
Dr. Haig Kojian (Kojian), a court-appointed and approved forensic evaluator, *913 reviewed the arrest report, the probation officer's report and appellant's medical records. He interviewed appellant. After he submitted his report, he also viewed the videotaped interrogation. Based on his assessment, Kojian's opinion was that appellant was suffering from depression and mood disorder at the time of the incident. Kojian believed her psychological problems had two root causesa recent miscarriage and long-term, chronic emotional instability. Kojian also diagnosed appellant as having a substance abuse problem. But since she was not under the influence of any substance at the time of the incident, he did not believe her substance abuse played any role in her conduct.
Kojian believed that appellant misconstrued Dawn' statements and constructed the delusion that "everything would be right if she just had a baby of her own" because of her depression and mood disorder. He further opined that her condition made it impossible for her to rationally step back and analyze her actions.

DISCUSSION

Appellant's Contentions
As a general rule, to sustain a conviction for kidnapping, the prosecution is required to prove the perpetrator used force or fear. In the ordinary case without proof that the victim's free will was overcome by force or fear or a threat of force, a kidnapping does not exist. (People v. Alcala (1984) 36 Cal.3d 604, 622, 205 Cal.Rptr. 775, 685 P.2d 1126.)
Accordingly, appellant contends succinctly that "in the absence of any evidence that she seized and moved Cameron by means of force or fear, the juvenile court erred in finding that she had violated section 207, subdivision (a)." Appellant argues that "forceful seizure remains an essential element of every kidnapping offense, save and except a kidnapping undertaken for purposes of engaging in lewd conduct with a child."
Correctly noting that there has yet to be a case squarely on point, appellant argues that the prosecution presented no evidence that appellant abducted Cameron by the use of either force or fear and the crime committed more accurately qualifies as child abduction (§ 278)[3] than kidnapping.

ANALYSIS
Section 207, subdivision (a) provides: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, . . . any person in this state, and carries the person into . . . another part of the same county, is guilty of kidnapping." (Emphasis added.)
The elements of the offense of kidnapping from the California Jury Instructions (CALJIC) are as follows: "In order to prove this crime, each of the following elements must be proved: [¶] [1. A person was [unlawfully] moved by the use of physical force [, or by any other means of instilling fear];] [¶] [1. A person was [unlawfully] compelled by another person to move because of a reasonable apprehension of harm;] [¶] 2. The movement of the other person was without [his][her] consent; and [¶] 3. The movement of the other person in distance was substantial in character." (CALJIC No. 9.50, emphasis added.)
Section 207, the simple kidnapping statute, was originally enacted in 1872 and has *914 existed for 130 years with only minimal modifications to the original text. All versions have included the element of "forcibly" taking a person.
A number of cases have dealt with various aspects of the proof required for kidnapping. In People v. Oliver (1961) 55 Cal.2d 761, 12 Cal.Rptr. 865, 361 P.2d 593, the California Supreme Court acknowledged the practical and legal difficulties associated with ascertaining the mindset of persons who are incapable of giving or withholding consent because of age or mental condition. The Oliver court concluded: "Penal Code, section 207, as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal consent thereto, should, . . . be construed as making the one so acting guilty of kidnaping only if the taking and carrying away is done for an illegal purpose or with an illegal intent." (Id. p. at 768, 12 Cal.Rptr. 865, 361 P.2d 593.)
A footnote in a later decision of the Court of Appeal suggested that when the victim is immature or mentally compromised, the "force or fear" element may also be interpreted more expansively. In Parnell v. Superior Court (1981) 119 Cal. App.3d 392, 402-403, footnote 3, 173 Cal. Rptr. 906 stated: "It should be noted that, while we here hold the requisite force was present to support the kidnaping charge, our Supreme Court has implied that the kidnaping of a minor can be accomplished even if unaccompanied by force so long as it was done for an improper purpose, because a minor `is too young to give his legal consent to being taken. . . .' (People v. Oliver 55 Cal.2d 761, 764-765, 12 Cal. Rptr. 865, 361 P.2d 593.) . . . However, as above stated, we need not rely upon the dicta in Oliver to support the kidnapping charge since we have found sufficient evidence of force." (Emphasis added.)
In the recent case of People v. Hill (2000) 23 Cal.4th 853, 98 Cal.Rptr.2d 254, 3 P.3d 898, the Supreme Court had an opportunity to revisit these issues. In Hill, as in Parnell, the court found that there was sufficient evidence of the use of force, but added the following comment: "We need not, and do not, decide whether, or to what extent the Oliver decision eliminated the need to show as to a child force or fear in addition to an illegal purpose, or whether the illegal purpose itself establishes force or fear (see Parnell v. Superior Court (1981) 119 Cal.App.3d 392, 402-403, fn. 3, 173 Cal.Rptr. 906), for here ample evidence of force or fear exists." (Id. at p. 857, 173 Cal.Rptr. 906.)
Given the above authorities, appellant argues "[t]he centuries old rule that a conviction for kidnapping in violation of section 207, subdivision (a) requires a showing that the perpetrator acted with `force or fear' remains the law, even if, as here, the victim is a child."
In People v. Hill, supra, 23 Cal.4th 853, 857, 98 Cal.Rptr.2d 254, 3 P.3d 898, although the court indicated that it did not have to inquire "whether, or to what extent the Oliver decision eliminated the need to show as to a child force or fear in addition to an illegal purpose, or whether the illegal purpose itself establishes force or fear," it did make the following observations: "At the least, our decision in Oliver `indicated that in kidnapping cases the requirement of force may be relaxed where the victim is a minor who is "too young to give his legal consent to being taken" and the kidnapping was done for an improper purpose.' [Citations.] Here, defendant snatched the baby as well [as] the mother. The baby certainly did not move herself. . . . We are unaware of any authority that to suffer kidnapping, a baby must *915 apprehend any force used against her." (Id. at pp. 857-858, 98 Cal.Rptr.2d 254, 3 P.3d 898.)
"As with kidnapping, an analytical problem arises when the victim is an infant. But we do not believe the solution is to conclude that an infant, lacking an independent will cannot be the victim of a carjacking. . . . [¶] When applied to an infant, we believe that what the Legislature most likely meant by `against his or her will' was merely the absence of lawful consent, not an affirmative act of free will. The Oliver decision, concerning kidnapping's analogous, if implied, requirement that the victim's free will be overborne, points the way. Oliver did not require an affirmative showing that the taking was against the child's will. It sufficed if the taking was for an unlawful purpose." (People v. Hill, supra, 23 Cal.4th 853 at pp. 859-860, 98 Cal.Rptr.2d 254, 3 P.3d 898.)
As shown, in prior cases it was never deemed necessary to directly resolve the issue of the "force" requirement when considering the kidnapping of a child. The case law has thus left open the question what "force" is required in a kidnapping case. In this case it is impossible to side step the issue.
Black's Law Dictionary defines "force" as follows: "Force. Power, dynamically considered, that is, in motion or in action; compulsion; strength directed to an end. Commonly, the word occurs in such connections as to show that unlawful or wrongful action is meant; e.g. forcible entry. [¶] . . . [¶] Unlawful force. Force, including confinement, which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or actionable tort or would constitute such offense or tort except for a defense (such as absence of intent, negligence, or mental capacity; duress; youth; or diplomatic status) not amounting to a privilege to use the force." (Black's Law Diet. (5th ed.1970) p. 580, col. 2.) "Forcible" means "[e]ffected by force used against opposition or resistance; obtained by compulsion or violence." (Id. at p. 581, col. 1.)
Webster's Dictionary defines "force" as: "Force [noun]; la: strength or energy exerted or brought to bear: cause of motion or change; active power . . . 3: violence, compulsion, or constraint exerted upon or against a person or thing. . . . Force [transitive verb]; 1: to do violence to; [especially]: RAPE 2: to compel by physical, moral or intellectual means." (Webster's New Collegiate Diet.) (Tenth ed.1995. p. 455, col. 1.) "Forcible" is "1: effected by force used against opposition or resistance, 2: characterized by force, efficiency or energy." (Id. at p. 455, col. 2.)
In the Penal Code it is impossible to locate one single consistent interpretation of "force." Differing meanings of force have been found and the definitions vary depending on the particular statute under consideration. Force has been "held to require clarification because the legal definition . . . differ[s] from the definition that might be ascribed to [the] term[ ] in common parlance." (People v. Richie (1994) 28 Cal.App.4th 1347, 1360, 34 Cal.Rptr.2d 200; People v. McElheny (1982) 137 Cal. App.3d 396, 403, 187 Cal.Rptr. 39; People v. Pitmon (1985) 170 Cal.App.3d 38, 52, 216 Cal.Rptr. 221.) But, People v. Anderson (1966) 64 Cal.2d 633, 639, 51 Cal.Rptr. 238, 414 P.2d 366, held in the context of a robbery prosecution "[t]he terms `force' and `fear' as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." (Id. at p. 640, 51 Cal.Rptr. 238, 414 P.2d 366.)
*916 After review, we are left therefore with no controlling definition of force in the context of the kidnapping of a child. Appellant's contention seems to be that the force required is more akin to the definition which describes force as "effected by force used against opposition or resistance; obtained by compulsion or violence." For reasons stated below, we disagree with this contention.
Code of Civil Procedure section 1859 states, "In the construction of a statute the intention of the Legislature . . . is to be pursued, if possible. . . ." However, no doubt due to the longevity of the kidnapping statutes, there is no legislative history from the enactment of section 207. There have been only a few modifications from the original statute as adopted in 1872 and those amendments have no bearing on this issue.
General principles of statutory interpretation point in conflicting directions. There is a long-standing rule of "lenity" by which a "defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute . . . ." (Ex parte Rosenheim (1890) 83 Cal. 388, 391, 23 P. 372.) This rule coexists with section 4, which provides "[t]he rule of common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."
While generally true that ambiguity in a criminal statute should be resolved in favor of the defendant: "it must be emphasized that the canon entitles the defendant only to the benefit of every realistic doubt. This rule of construction `"is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language."' (People v. Hallner (1954) 43 Cal.2d 715, 721, 277 P.2d 393[], quoting United States v. Brown (1948) 333 U.S. 18, 25-26, 68 S.Ct. 376, 92 L.Ed. 442[ ].) Or in the words of Justice Black, writing for the Court in United States v. Raynor (1938) 302 U.S. 540, 552, 58 S.Ct. 353, 82 L.Ed. 413[], the rule does not `require[ ] that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scopenor does any rule require that the act be given the "narrowest meaning." It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislative body].'" (People v. Anderson (1987) 43 Cal.3d 1104, 1145-1146, 240 Cal.Rptr. 585, 742 P.2d 1306, second italics ours.)
Ultimately, in reliance upon common sense, the promotion of justice and the presumed intent of the legislature, we find it to be inconceivable that the Legislature intended the physical taking of an infant in the manner described in these facts not to be the crime of kidnapping. In fact, we believe the taking of an infant or child in this manner is the prime example of kidnapping and is clearly intended to be within its scope.
In another California case with very similar facts, the defendant was convicted of kidnapping and the issue of "force" was never raised. In People v. Campos (1982) 131 Cal.App.3d 894, 182 Cal.Rptr. 698, the defendant took an 11 month old child from its mother in Los Angeles. Like appellant in this case, the mother and Campos had known each other for some time. On the day of the kidnapping defendant volunteered to take the child with her when she went out to ask an acquaintance for money for Pampers and milk. The mother declined *917 to let Campos take the child by herself and the defendant essentially took the child while the mother's back was turned. Campos's contention on appeal was her conduct could only be prosecuted as child stealing.[4]
The Court of Appeal affirmed the kidnapping conviction holding: "it belies common sense to suggest, as appellant apparently does, that in forcibly stealing a baby from its mother, taking the baby to a foreign country and abandoning it there, appellant did not also commit a crime against the child, the crime of simple kidnapping."[5] (Campos, supra, 131 Cal. App.3d at p. 899, 182 Cal.Rptr. 698.) The fact that the use of force was a required element for conviction of this offense was never directly addressed in Campos and surprisingly not answered in any other case we located.
We believe that it belies common sense to conclude that taking an infant without the knowledge and permission of the parent is not kidnapping because there was no "force" involved in the abduction. There was compulsion however, as the child did not move itself. We therefore conclude that to prove a violation of section 207 when the victim is an infant or child, overcoming resistance is not required and the element of the use of force is satisfied simply by the application of sufficient physical force by the perpetrator to accomplish the unlawful act. The amount of force required would therefore differ in each individual case. An evaluation of the force requirement would therefore include a review of all relevant circumstances of the taking, including the relative ages and sizes of the defendant and the victim. Based on this standard, the amount of force required to kidnap an unresisting infant or child would be simply be the amount of physical force required to take and remove the child from the location where she was found.
In the current appeal, the trial court found that the "force" or "fear" element was established beyond a reasonable doubt based on appellant's act of "physically removing the child from that area [Pic `N Save] and traveling a distance on a bus and on foot. . . ." We agree that substantial evidence supports the juvenile court's finding that appellant violated section 207, subdivision (a). The evidence is that appellant took Cameron without the permission of her mother and left the store. She traveled approximately one and one-half miles from Pic `N Save. Appellant told Anaya that she was trying to get to Fullerton. When interviewed by the police appellant first told Ferrari she was babysitting Cameron, but later admitted she intended to take Cameron to a friend's house in Fullerton. She also told Ferrari she took the child with the hope *918 that she could raise her herself. Substantial evidence supports the sustaining of this petition.

DISPOSITION
The judgment of the juvenile court sustaining the petition against appellant is affirmed.
We concur: NOTT, J. Acting P.J., and TODD, J.
NOTES
[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[2] The petition originally realleged the violation of section 207, subdivision (a) as Count 2. The prosecution dismissed Count 2 at the adjudication hearing.
[3] Section 278 provides: "Every person, not having a right to custody, who maliciously takes, entices away, keeps, withholds, or conceals any child with the intent to detain or conceal that child from a lawful custodian shall be punished by imprisonment in a county jail . . . or by imprisonment in the state prison . . . a fine. . . or both that fine and imprisonment.
[4] While the start of the kidnapping in Campos was factually similar to this appeal, the ending was tragically different. The defendant took the child to Mexico and abandoned her there and the mother never saw her child again. Defendant was arrested in Monterey two years after the abduction.
[5] The Campos decision also addressed whether one could be guilty of both kidnapping and child stealing. The court there noted: "Child stealing has always been considered in California to be a crime against the parent, not the child. It is designed to protect parents against the anxiety and grief, which necessarily follow from the taking of their children. (Wilborn v. Superior Court (1959) 51 Cal.2d 828, 830-831, 337 P.2d 65[]; People v. Gillispie (1930) 104 Cal.App. 765, 767, 286 P. 502[]; People v. Torres (1920) 48 Cal.App. 606, 608, 192 P. 175[].) But it belies common sense to suggest, . . . that in forcibly stealing a baby from its mother . . . appellant did not also commit a crime against the child, the crime of simple kidnapping." (Campos, supra, 131 Cal.App.3d at p. 899, 182 Cal.Rptr. 698.)