Filed 7/24/15  P.v. Farias CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060754 |
| v. | (Super.Ct.No. RIF1301971) |
| EDWARD FARIAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rafael A. Arreola, Judge.

(Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art.

VI, § 6 of the Cal. Const.)  Affirmed.

Mario Rodriguez for Defendant and Appellant.

Esther K. Hong, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General,

Eric A. Swenson, Ryan H. Peeck and Kimberley A. Donohue, Deputy Attorneys General,

for Plaintiff and Respondent.

1

Edward Farias, defendant, argued with his pregnant wife, Jane Doe, and pushed her, causing her to fall on her knees, culminating a five-year marriage involving domestic violence. Doe stated defendant wanted to cause her to have a "natural abortion" because he wanted a male child and the unborn child was female. A prior incident involved pushing Doe down some stairs, which led to a miscarriage in 2010. Defendant was charged with attempted murder of the fetus (Pen. Code, §§ 664, 187, subd. (a)),[1] aggravated assault on Doe (§ 245, subd. (a)(4)), criminal threats (§ 422), dissuading a witness (§ 136.1), and battery against a spouse (§ 243, subd. (e)(1)). A jury found him guilty of all counts, but determined that the attempted murder was not premeditated. Defendant appealed.

On appeal, defendant argues (a) the court erred in admitting (1) the deputy's testimony of Jane Doe's entire interview with police, including prior consistent statements; (2) the paramedic's testimony regarding Jane Doe's prior consistent statements; (3) Jane Doe's sister's testimony regarding Jane Doe's prior consistent statements; (4) testimony from both Jane Doe and her sister regarding prior sexual acts; and (b) the cumulative effect of the various errors requires reversal. We affirm.

## BACKGROUND

Jane Doe and defendant were married in 2008. Shortly thereafter, defendant became more distant, and started calling Doe names when they were alone. Defendant forced Doe to have sex with him whenever he felt like it, even during her menstrual

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

cycle, although before the day of the trial, she had never reported this to anyone. Defendant told her that was what she was there for, and treated her like a prostitute, requiring her to engage in acts such as sodomy. Defendant also controlled the money, paid all the bills, and did not allow Doe to work or drive the car. Because she did not have access to money, Doe's sisters brought food to her.

Doe became pregnant with her first child, A., within a month of the marriage. A. was born in February 2009. Doe's twin sister, Esmeralda, stayed with Doe after A.'s birth, but left after a month. After Esmeralda left, the verbal abuse got worse and defendant forced Doe to have sex with him, even though Doe's doctor had advised against it.

In 2010, when A. was eight months old, Doe learned she was pregnant for the second time, but defendant complained he was too young to be a father. The relationship between Doe and defendant got worse. One month or so into the pregnancy, defendant became angry when A., who was hungry, started crying, and told Doe to shut the child up.

As Doe went downstairs, defendant pushed her from behind, causing her to fall down eight steps. When she tried to stand up, she discovered she was bleeding vaginally, and felt birth pains. She asked defendant to take her to the hospital, but defendant refused, so Doe called her sister, Esmeralda. Esmeralda arrived and called 911 because defendant refused to do so. Defendant told Doe that if she said anything about what happened, she would not find her little girl.

3

At the hospital, an emergency room doctor confirmed Doe had been pregnant, but an ultrasound revealed that the six week, four-day-old fetus had no heartbeat, indicating intrauterine fetal death. Doe reported there was no trauma prior to the miscarriage. The doctor, who is a mandated reporter of abuse, saw no bruising, redness, or swelling on Doe's body suggestive of abuse, and Doe informed the doctor that the symptoms had begun the previous day but persisted, so she had decided to come in.

In September 2012, Doe became pregnant with her third child. Defendant was not happy to learn of the pregnancy and told Doe that it had better be a boy. At this time, the family lived in the lower apartment of a garage unit. During the time they lived in the garage unit, defendant would not let Doe or A. go out. Defendant was violent all the time while she was pregnant, and when he found out it was going to be a girl, he became very bothered.

In November 2012, Doe informed one of her doctor's staff that she was fearful of defendant. The doctor talked to defendant about domestic violence and how to treat a woman, including the importance of avoiding trauma to the abdomen and stress. Once outside the doctor's office, defendant told Doe he would get even with her, and that he did not want the baby to be born.

Doe did not tell the doctor defendant had physically abused her, or he would have reported it as a mandatory reporter. The obstetrician's records noted that in addition to the 2009 pregnancy with A., Doe had been pregnant previously, in 2007, but had miscarried. His records also reflected treatment in the emergency room for an ovarian cyst, although Doe denied any such history. When she was five months pregnant with

4

her third child, Doe had an ultrasound, which revealed the unborn baby would be a girl. When he found out the baby's gender, defendant became more aggressive and told her he wanted her to have an abortion.

Doe denied ever yelling at defendant during her marriage to defendant, and indicated she always tried to get defendant to speak peacefully, because she loved peace. However, the upstairs neighbor, who could hear what went on in defendant's unit because of the thin walls, never heard defendant yelling at Doe, although she could hear him talking. Instead, she heard Doe crying and yelling in the evenings, and sometimes in the mornings, like she was complaining more than anything.

A. started preschool when she was three or four, while the family lived in the garage apartment, but she missed class when defendant did not want to take her to school. On March 17, 2013, while Doe was helping A. with homework, defendant told A. to pay no attention to Doe, and told A. to hit her mother. Defendant sent A. into the bedroom to watch television after Doe said, "Look what she did," and then raised his voice, insulting Doe. Defendant called Doe "stupid" and "trash," and then pushed her, telling her that this baby would not be born. He told Doe, who was seven months pregnant, that it would appear to be normal, as it was with the other baby, that an abortion was natural.

After defendant pushed Doe on the abdomen, she fell backwards, but she managed to get her hands on the door, so that she fell onto her knees. Then defendant slapped her when she tried to get up. Doe tried to grab her phone to call the police, but defendant grabbed it and broke it, telling Doe to shut up or he would kill her. Doe went outside, in

pain, until her sister, Esmeralda, arrived.[2]  Esmeralda called the paramedics after Doe told her defendant had beaten her.  Esmeralda tried to stop him, but defendant left, telling Doe she was crazy and denying that he had done anything.  Doe told the paramedic that she had been pregnant three times, with one live birth, and one prior miscarriage due to a similar incident with the same man in the past.

At the hospital, Doe could not hear the baby's heart beat and experienced pre-term contractions.  Doe informed the labor and delivery nurse that she had been abused by her husband, so a domestic violence report was made to the police.  Doe told the nurse that defendant slapped her head and struck her twice in the abdomen.  During her examination of Doe, the nurse saw no bruises or hand prints on Doe's abdomen.  The nurse monitored the baby's heart rate, which decreased on occasion.

Doe was still in the hospital on March 18, 2013, when Deputy Santiago contacted her in response to the domestic violence report made the previous day.  Doe reported that she and defendant had argued over their daughter's homework, which escalated to a loud verbal argument in which defendant was the aggressor.  Doe stated that defendant encouraged A. to slap and hit Doe, that A. had said something derogatory to Doe and hit Doe, before defendant removed A. to another room.  Doe related that the argument continued until defendant hit her, and demonstrated how defendant hit her.

---

[2]  The neighbor who lived upstairs from Doe and defendant testified that Doe was talking on the phone outside the apartment, before Esmeralda arrived.  The record does not indicate what phone she was using.

6

Doe also informed the deputy of the incident in which defendant pushed her down the stairs, and that she had lost the baby she was carrying at the time. She told the deputy that defendant stated an abortion is a natural occurring event and that if he were to initiate a natural abortion, he did not feel there was anything wrong. During this interview, Doe did not mention being obligated to have sex with the defendant, and described being pushed only once by defendant on this occasion.

Defendant was charged by way of information with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 1), criminal threats (§ 422, count 2), attempt to dissuade a witness (§ 136.1, subd. (c)(1), count 3), attempted murder of the unborn baby (§§ 664, 187, subd. (a), count 4), and battery of a spouse (§ 243, subd. (e)(1), count 5.) The information included notice to the defendant of the prosecution's intent to offer other acts of domestic violence pursuant to Evidence Code section 1109. Defendant was tried by a jury and convicted of all counts. However, the jury made a finding that the attempted murder was not premeditated or deliberate. He was sentenced to an aggregate term of 10 years, 8 months in state prison and appealed.

## DISCUSSION

Defendant raises four claims pertaining to the admission of certain testimony during trial, and a separate claim seeking reversal based on the cumulative effect of those evidentiary errors.

a.      *Standard of Review*

The trial court's evidentiary rulings are reviewed for abuse of discretion. (*People v. Geier* (2007) 41 Cal.4th 555, 586, citing *People v. Jablonski* (2006) 37 Cal.4th 774,

821; *People v. Rowland* (1992) 4 Cal.4th 238, 264.)  Where a discretionary power is statutorily vested in the trial court, its exercise of that discretion must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd matter that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, citing *People v. Jordan*  (1986) 42 Cal.3d 308, 316; see also, *People v. Ogle* (2010) 185 Cal.App.4th 1138, 1145 [determination of whether probative value of evidence is outweighed by prejudice].)

Defendant also frames each issue as a violation of his right to due process of law because of the impact each error had on defendant's right to a fair trial.  Defendant acknowledges that the due process claims were forfeited due to his failure to object to each item of evidence on constitutional grounds, but urges us to consider the points, anyway.  Because we conclude there was no prejudicial error, we do not need to address the constitutional claims.  The admission of evidence, even if error under state law, only violates due process if it makes the trial fundamentally unfair.  (*People v. Partida* (2005) 37 Cal.4th 428, 436 (*Partida*).)

b.      *Admissibility of Doe's Prior Statements to Deputy Santiago.*

Deputy Santiago testified that he contacted Jane Doe in the hospital and interviewed her about the incident.  Defendant objected on hearsay grounds when he testified he asked Doe what happened.  The prosecutor did not make an offer of proof, but trial court overruled the objection, subject to a motion to strike.  Although the court granted defendant's request for a standing objection, the deputy then described what Jane Doe told him during the interview about the incident and the history of domestic

8

violence. Jane Doe had previously testified, covering the same topics. The defense did not make a motion to strike the testimony.

Defendant argues that the testimony was inadmissible pursuant to Evidence Code sections 791 and 1236, relating to the admissibility of prior consistent statements. Evidence Code section 780 permits a jury to consider, in determining the credibility of a witness, any matter that has a tendency in reason to prove or disprove the truthfulness of the testimony at the hearing, including, but not limited to a statement previously made by the witness that is consistent with his or her testimony at the hearing.

Evidence Code section 791 prohibits admission of prior consistent statement of a witness unless it is offered after (a) admission of a prior inconsistent statement, or (b) an express or implied charge has been made that the witness's testimony has been recently fabricated. Evidence Code section 1236 permits admission of prior consistent statements if they are consistent with the witness's testimony and if the statements are offered in compliance with Evidence Code section 791. Both sections address admissibility of statements by a witness who testifies at a hearing, for purposes of rehabilitation. However, Evidence Code section 1236 permits a prior consistent statement of a witness to be used as substantive evidence because the declarant is present in court and subject to cross-examination. (1 Witkin, Cal.Evid. (5th ed., 2012) §158, pp. 1003-1004; §162, p. 1010; see *People v. Cannady* (1972) 8 Cal.3d 379, 386-387.)

Hearsay evidence is evidence of a statement made *other than* by a witness while testifying at the hearing that is offered to prove the truth of the matter stated. (Evid. Code, § 1200, subd. (a), italics added.) Hearsay is inadmissible unless it falls within an

9

exception to the general rule.  (Evid. Code, § 1200, subd. (b).)  Hearsay is inadmissible because the statements are not made under oath, the adverse party has no opportunity to cross-examine the declarant, and the jury cannot observe the declarant's demeanor while making the statements.  (*People v. Duarte* (2000) 24 Cal.4th 603, 611, quoting from *People v. Fuentes* (1998) 61 Cal.App.4th 956, 960-961.)

Evidence Code sections 791 and 1236 refer to statements by a *witness* who has testified at the hearing.  Recent fabrication, as the term is used in Evidence Code section 791, may be inferred when it is shown that a witness did not speak about an important matter at a time when it would have been natural for him or her to do so, and in such a circumstance, it is generally proper to permit rehabilitation by a prior consistent statement.  (*People v. Lopez* (2013) 56 Cal.4th 1028, 1066, quoting *People v. Riccardi* (2012) 54 Cal.4th 758, 802.)

Here, Jane Doe, the prosecution's first witness, was cross-examined and impeached by the defense on several points.  She testified that defendant struck her in the face, and pushed her once in the abdomen causing her to fall, although she reported to the nurse who attended her that defendant had slapped her head, and then hit her abdomen twice, but did not indicate she had fallen.  Doe testified she told her doctor that defendant was hitting her, although her doctor testified that she reported only that she was fearful, and that as a mandatory reporter, he would have reported the domestic violence if she had informed him of it.  Most significantly, the defense elicited that Jane Doe had never previously reported that defendant forced her to have sex with him.  Further, she

10

attributed her 2010 miscarriage to defendant's act of pushing her downstairs, although the emergency room doctor testified she denied any trauma.

Having impeached Jane Doe's testimony, the People were entitled to rehabilitate her credibility through prior consistent statements within the meaning of Evidence Code sections 791 and 1236. There was no error in admitting the entirety of Jane Doe's interview as a proper exercise of judicial discretion. In fact, the deputy's testimony reinforced the defense position that Doe was exaggerating or fabricating because he acknowledged that Doe never mentioned being forced to have sex with defendant. Because the trial court had discretion to admit the evidence pursuant to sections 781, 791, and 1236 of the Evidence Code, and did not abuse that discretion, there was no violation of due process.

c.      *Admissiblity of Doe's Prior Statements to the Paramedic*.

In a similar argument, defendant contends the trial court erred in admitting statements made by Jane Doe to the paramedic on March 17, 2013, respecting the prior miscarriage that she attributed to being pushed down the stairs. Defendant contends that because the defense did not imply or charge that Doe had recently fabricated the stairs incident in 2010, or that she had an improper motive or bias to lie about this incident, it was error to overrule defendant's hearsay objection. We disagree.

The defense elicited testimony from the emergency room doctor who treated Doe in 2010 that she denied any trauma prior to experiencing the symptoms which caused her to go to the emergency room. In light of this impeachment, it was proper to elicit a prior consistent statement to rehabilitate Doe's credibility, within the meaning of Evidence

11

Code sections 781, 791, and 1236, as explained in the previous section. The ruling did not violate defendant's right to a fair trial.

d.      *Admissibility of Doe's Prior Statements to Her Sister.*

Defendant also claims the admission of Esmeralda's testimony relating to Doe's prior consistent statement was improper under Evidence Code section 791, subdivision (b). We disagree.

The issue was forfeited by the lack of objection to the testimony. (Evid. Code, § 353, subd. (a); *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 413; *Partida, supra,* 37 Cal.4th at pp. 428, 433-434.) The reasoning we have applied in the two prior challenges applies here. Esmeralda testified after Doe, whose credibility was challenged on a number of points. The admission of prior consistent statements was a proper exercise of judicial discretion which did not violate defendant's right to a fair trial.

e.      *Admissibility of Doe's and Esmeralda's Testimony Relating to Forced Sexual Acts Constituted Harmless Error.*

At trial, the prosecutor elicited testimony from Doe that defendant forced Doe to engage in sex, even during her menstrual cycle. Afterwards, the prosecutor asked Doe to explain what she meant by that. Defendant objected on the ground there had been no disclosure during discovery of forced sexual behavior. [3] The trial court ruled that in domestic violence cases, forced sex may be prior behavior of potential violence, admissible pursuant to Evidence Code section 1109.

---

[3] The information included a notification pursuant to Evidence Code section 1109 regarding the possible proffer of prior incidents of domestic violence.

Later, during the testimony of Esmeralda, the prosecutor asked if Doe had ever told her that defendant would have forced sex with her whenever he wanted, and requested further explanation. Defendant did not object to the question or Esmeralda's response that Doe told her he would force her to have sex during her menstrual cycle. Having failed to object to Esmeralda's testimony, we consider any challenge to her testimony to be forfeited, and will limit our focus to Doe's testimony. (Evid. Code, § 353, subd. (a).)

Evidence Code section 1109 provides that in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Evidence Code section 1101 if it is not inadmissible pursuant to Evidence Code section 352. Subdivision (b) of Evidence Code section 1109 provides that when such evidence is to be offered, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, in compliance with the provisions of section 1054.7.

"Domestic violence" is defined by section 13700 as "abuse" committed against a spouse or cohabitant. (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.) The definition of domestic violence/abuse has been held to encompass the definition of forcible rape, as defined by section 261, subdivision (a)(2), where both involve reasonable apprehension of imminent serious bodily injury to the victim. (*Id.,* at p. 1139.) Thus, forcible rape is a higher level of domestic violence. (*Ibid.*)

However, the evidence of alleged forced sexual relations presented here did not describe prior acts which could be defined as either rape or domestic violence because Doe did not testify that she submitted to the sex acts out of a reasonable apprehension of imminent serious bodily injury. There was no evidence that defendant threatened to harm her if she did not submit to him sexually, and no evidence of violence in the sex acts themselves. In short, there is insufficient evidence to conclude that the sexual acts were forcible or violent enough to qualify as abuse.

The People urge us to consider that Jane Doe's testimony of the sexual acts qualified as spousal rape, as defined by section 262. However, even spousal rape includes the element of force, violence, duress, menace or fear of immediate bodily injury, elements missing from Jane Doe's testimony. The testimony regarding the sexual acts did not qualify as domestic violence within the meaning of Evidence Code section 1109.

Also problematic is the prosecution's failure to provide timely discovery of the proposed propensity evidence, in compliance with section 1054.7. That section requires that disclosures be made at least 30 days prior to trial unless good cause is shown. The purpose of the reciprocal discovery provisions is to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial. (*Woods v. Superior Court* (1994) 25 Cal.App.4th 178, 184.)

During in limine proceedings, the defense sought a ruling that any Evidence Code section 1109 evidence that was not previously disclosed to the defense would not be

14

admitted.  The prosecutor stated that everything they had received from Doe during the investigation or subsequent interviews had been turned over to the defense.  The court granted the motion.  Nevertheless, the prosecutor asked Doe a pointed question about "how sex was in [her] relationship with [her] husband."  When the defendant objected, the prosecutor explained that she failed to provide discovery because "I didn't interview her about her sexual relationship with the defendant prior to today."

Postponing victim interviews until the day of trial does not constitute good cause for failure to provide discovery.  The prosecutor should have disclosed the information to the defense promptly, even if it was obtained on the day of trial.  Refraining from obtaining information readily available to it does not relieve the prosecution of its duty to disclose it.  (*In re Littlefield* (1993) 5 Cal.4th 122, 134-135.)  The duty of disclosure applies to information "readily accessible" to the prosecution.  (*Ibid.*)  While it is true that the prosecution has no general duty to seek out, obtain, and disclose all evidence that might be beneficial to the defense, it does have the duty, when presented with an informal request from the defense, to satisfy the specific discovery provisions of section 1054, et sequitur.  (*People v. Little* (1997) 59 Cal.App.4th 426, 432.)

The prosecution was required to disclose the information as soon as the information came to light, to permit the defense to either request a continuance (see *People v. Verdugo* (2010) 50 Cal.4th 263, 281 (*Verdugo*) [prosecutor told defense about substance of statement at the time it was made, the trial court stopped direct examination of the witness and granted the defense a continuance to prepare for cross-examination]), or to seek exclusion of the evidence outside the presence of the jury.

The People rely on *People v. Whalen* (2013) 56 Cal.4th 1, 66-68, arguing that the prosecution has no duty to disclose inculpatory information of which it is neither aware nor has in its possession, or the possession of a state agency. In *Whalen*, the defendant argued the prosecutor had committed misconduct by sandbagging the defense with testimony about a rape that had not previously been disclosed. The reviewing court found no misconduct. At oral argument, the People urge us to follow *Whalen*, arguing that the prosecutor did not learn of the sexual acts prior to the disclosure by Jane Doe while she was testifying on the witness stand.

However, we cannot conclude that the prosecutor did not learn of the information prior to the victim's testimony on the stand where the prosecutor in this case admitted interviewing Doe on this topic on the day of trial, so she had the information before eliciting it from Doe on the stand. It was error to allow the prosecutor to proceed with this line of questioning, in front of the jury, especially after the court had granted the defendant's in limine motion, without providing the defense an opportunity to investigate it.

Nevertheless, a violation of section 1054.1 is subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Verdugo, supra,* 50 Cal.4th at p. 280.) In this case, the evidence was not unduly prejudicial where Doe did not describe sexual violence or indicate any reasonable apprehension of imminent serious bodily injury. Given the instructions pertaining to the jury's duty when considering propensity evidence pursuant to Evidence Code section 1109, the lack of objection to

16

Esmeralda's testimony, and the fact the evidence was far less inflammatory than the evidence of pushing Doe down the stairs in 2010, no prejudice inured to defendant.

f.     *Cumulative Prejudice*

Defendant argues that the cumulative prejudice of the errors deprived him of his due process right to a fair trial.

It is true that a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009; *People v. Hill* (1998) 17 Cal.4th 800, 844.) However, we have found one harmless error.  Defendant was entitled to a fair trial, but not a perfect one.  (*Cunningham, supra,* at pp. 926, 1009, and cases cited; see also, *People v. Jasso* (2012) 211 Cal.App.4th 1354, 1378.)  Defendant was not deprived of a fair trial.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

17
